STATE OF NORTH CAROLINA v. ROY McCAIN, JR.

No. 6926SC468

(Filed 19 November 1969)

1. Homicide § 5— second-degree murder defined

Murder in the second degree is the unlawful killing of a human being with malice, but without premeditation and deliberation.

2. Homicide § 14— intentional killing with deadly weapon — malice

Malice is implied in law from the intentional killing with a deadly weapon.

3. Homicide § 3— deadly weapon — knife

A knife may be used as a deadly weapon.

4. Homicide § 21— second-degree murder — sufficiency of evidence

The State's evidence tending to show that defendant repeatedly stabbed deceased with a knife and that deceased died as a result of the stab wounds is *held* sufficient to be submitted to the jury on the issue of defendant's guilt of second-degree murder.

5. Homicide § 15; Criminal Law § 50— opinion testimony that deceased was dead — non-expert

In this homicide prosecution, the trial court properly admitted testimony by a detective that the deceased had a cut on the right side of his neck and what appeared to be three stab wounds in the stomach, and that in his opinion the deceased was dead when he observed him at the scene of the crime, the question of whether a person is living or dead not being wholly scientific or of such a nature as to render valueless any

opinion but that of an expert, and common inferences derived from the appearance, condition, or mental or physical state of a person being proper subjects of opinion testimony by non-experts.

**6. Homicide § 20; Criminal Law § 43— photographs of body of deceased**

   In this homicide prosecution, the trial court did not err in the admission for illustrative purposes of four photographs depicting the body of the deceased and the inside of the house where the alleged crime occurred, the State not having made excessive use of the photographs.

**7. Homicide § 20; Criminal Law § 43— gruesome photographs**

   The fact that a photograph is gory or gruesome will not alone render it incompetent.

APPEAL by defendant from *Falls, J.,* 12 May 1969 Schedule "B" Criminal Session of MECKLENBURG Superior Court.

The defendant was tried under a bill of indictment charging him with the second degree murder of Charles Weaver on 28 March 1969. The plea was not guilty and both the State and the defendant offered evidence.

The State offered the testimony of three eyewitnesses which tended to show that they were at 1107 North Allen Street in Charlotte on the night of 27 March 1969 and until approximately 2:00 or 2:30 the morning of 28 March 1969. The three-room house at that address contained a "juke box" and was commonly known as a "piccolo house." Sometime after midnight the defendant came into the house with his knife open and stated "I will kill you all." Charles Weaver, who was sitting on the couch beside the piccolo said to the defendant, "[y]ou wrong, man, you wrong." The defendant replied, "you ...... ......, I'll kill you" and proceeded to cut and repeatedly stab Weaver as he sat unarmed on the couch. Weaver "struggled" from the couch into the kitchen where he fell to the floor. The defendant left the house immediately with his girl friend, Johnnie Mae Davis. There was no evidence to indicate that the assault was in any manner provoked.

Dr. Hobart R. Wood, medical examiner for Mecklenburg County, performed an autopsy on the deceased on 28 March 1969. He found that the deceased had a total of nine stab wounds or cutting wounds about his body. In the opinion of Dr. Wood, the deceased died of multiple stab wounds. Two uniformed police officers and a city detective testified for the State that they went to the house at 1107 North Allen Street at approximately 2:30 a.m., 28 March 1969. Statements given the officers on that morning by the State's eye-

witnesses tended to corroborate their testimony in court. The officers described the scene and the condition of the deceased's body when they arrived.

The defendant testified on his own behalf that he went to the "piccolo house" three or four times during the night of 27 March 1969 and the morning of 28 March 1969. He stated that the people in the house, including the State's eyewitnesses, were dancing and drinking beer, wine and whiskey. Some were arguing and fighting. The defendant emphatically denied that he had killed the deceased or cut and injured him in any manner. He admitted that there was blood on his pants when he was arrested shortly after the incident allegedly occurred, but he explained that it could have come from a friend who had been cut earlier in the evening or from his girl friend who was bleeding about the neck.

Johnnie Mae Davis testified that she had dated the defendant for about a year and a half. She had been to the house on North Allen Street several times during the night in question. She stated that she and the defendant last went to the house about 40 minutes before the defendant was arrested. The defendant waited on the outside while she went inside and got her coat. At that time people inside the house were arguing but she saw no blood and noticed nothing unusual about the house. She and the defendant then left and did not return. The witness explained that she was bleeding on the night in question because she had been scraped or stabbed with a fingernail file in a fight with a girl earlier that night.

The jury returned a verdict of guilty as charged in the bill of indictment and from the judgment imposing a prison sentence of not less than 28 nor more than 30 years the defendant appealed assigning error.

*Attorney General Robert Morgan by Staff Attorney James L. Blackburn for the State.*

*Calvin W. Chesson and A. Victor Wray for the defendant appellant.*

GRAHAM, J.

The defendant assigns as error the court's refusal to grant his motion for judgment of nonsuit made at the close of the State's evidence and renewed at the close of all of the evidence.

[1-4] Murder in the second degree is the unlawful killing of a human being with malice, but without premeditation and delibera-

tion. *State v. Foust,* 258 N.C. 453, 128 S.E. 2d 889; *State v. Downey,* 253 N.C. 348, 117 S.E. 2d 39. Malice is implied in law from the intentional killing with a deadly weapon. *State v. Mangum,* 245 N.C. 323, 96 S.E. 2d 39; *State v. Benson,* 183 N.C. 795, 111 S.E. 869. A knife may be used as a deadly weapon. *State v. Randolph,* 228 N.C. 228, 45 S.E. 2d 132. Suffice it to say that in the trial of this defendant for second degree murder the testimony of various eyewitnesses that they saw him repeatedly stab the deceased with a knife and further evidence that the deceased died as a result of the stab wounds made out a clear case for the jury.

[5]    Defendant assigns as error the admission of testimony by a detective that the deceased had a cut on the right side of his neck and what appeared to be three stab wounds in the stomach, and that in his opinion the deceased was dead when he observed him at the scene of the alleged crime. "When relevant to the issue, a witness may testify to any thing he has apprehended by any of his five senses, or all of them together." *State v. Fentress,* 230 N.C. 248, 251, 52 S.E. 2d 795. It would have been completely impractical and unnecessarily time consuming for the witness to have been required, as suggested by the defendant, to describe in detail his observations respecting the deceased's "breathing, color, appearance, pulse, etc." in lieu of stating his opinion that the deceased was dead. The question of whether a person is living or dead is not wholly scientific or of such a nature as to render valueless any opinion but that of an expert. See 31 Am. Jur. 2d, Expert and Opinion Evidence, § 99. Common inferences derived from the appearance, condition, or mental or physical state of persons, animals and things are proper subjects of opinion testimony by non-experts. *Bane v. R. R.,* 171 N.C. 328, 88 S.E. 477; Stansbury, N.C. Evidence 2d, § 129. The evidence was properly admitted.

[6, 7]    Defendant's final assignments of error are to the admission of four photographs depicting the body of the deceased and the inside of the house where the alleged crime occurred. The record clearly indicates that these photographs were admitted only for the purpose of illustrating the testimony of witnesses. They were competent for that purpose. *State v. Gardner,* 228 N.C. 567, 46 S.E. 2d 824; *State v. Matthews,* 191 N.C. 378, 131 S.E. 743; *State v. Russ,* 2 N.C. App. 377, 163 S.E. 2d 84. The defendant contends that the photographs were excessive and prejudicial and should have been excluded under the authority of *State v. Foust, supra.* This contention is without merit. In the *Foust* case the State introduced ten gory color photographs of the victim's body and elicited detailed testimony as to the death wound, even though the defendant had stipulated that the de-

ceased died as a result of the gun shot wound which came from the gun in the State's possession. The court noted that under the circumstances of that case the State had made excessive use of the ten photographs. Here there was no stipulation as to the cause of death. Furthermore, the four photographs were useful to the witnesses in illustrating their testimony and likely helpful to the jury in understanding it. The fact that a photograph is gory or gruesome will not alone render it incompetent. *State v. Porth,* 269 N.C. 329, 153 S.E. 2d 10; *State v. Gardner, supra.*

In the entire trial we find no error.

No error.

CAMPBELL and PARKER, JJ., concur.