STATE OF NORTH CAROLINA v. DAMENON ROPMELE EARLY

No. COA08-68

(Filed 6 January 2009)

### 1. Evidence— photographs—autopsy of murder victim— nature of wounds—probative of self-defense

The trial court did not abuse its discretion by admitting eight autopsy photographs of a murder victim where self-defense was an issue and the nature of the wounds was probative of that issue.

### 2. Evidence— prior statement—corroborative—limiting instruction—admissibility

The trial court did not abuse its discretion in a first-degree murder prosecution by admitting a prior statement about the crime by a State's witness. The prior statement described events in the same manner as his testimony during the trial, the State offered the prior statement for corroborative purposes, and the court gave a limiting instruction at the time the evidence was offered and at the conclusion of the trial.

### 3. Search and Seizure— disputed consent—evidence cumulative and not prejudicial

There was competent evidence that the legal occupants of the residence where defendant was living consented to a search, but it is not clear whether the court found that defendant consented to the search of the bedroom closet in issue. Assuming that the trial court erred in failing to suppress the gun box and bullets seized from the closet, the evidence was merely cumulative and it is highly improbable that the evidence had any effect on the outcome of the trial.

### 4. Discovery— surprise witness—failure to object—contention not considered

Defendant did not object to a witness at trial and could not properly contend that the trial court abused its discretion by failing to impose sanctions for the State not complying with discovery.

### 5. Criminal Law— jury inquiry—instructions repeated—no plain error

Defendant did not object at trial, and there was no plain error, where the jury in a first-degree murder trial inquired about

**STATE v. EARLY**

[194 N.C. App. 594 (2009)]

the difference between second-degree murder and voluntary manslaughter and the trial court reread the pattern jury instructions for second-degree murder, voluntary manslaughter, and self-defense.

**6. Homicide— shooting—malice, premeditation and deliberation—sufficiency of evidence**

There was sufficient evidence of malice, premeditation, and deliberation in a first-degree murder prosecution, and the trial court did not err by denying defendant's motion to dismiss, based on the nature and number of shots, the fact that defendant raised and aimed his gun at the victim, the statements made prior to the shooting, and the fact that the victim walked away before defendant shot him.

Appeal by defendant from judgment entered 23 August 2007 by Judge Timothy S. Kincaid in Cleveland County Superior Court. Heard in the Court of Appeals 22 May 2008.

*Attorney General Roy Cooper, by Assistant Attorney General Derrick C. Mertz, for the State.*

*Christy E. Wilhelm for defendant appellant.*

McCULLOUGH, Judge.

Defendant Damenon Ropmele Early ("defendant") was tried before a jury at the 13 August 2007 Criminal Session of Cleveland County Superior Court after being charged with one count of first-degree murder. The State's evidence tended to show the following: On 17 April 2006, Paras Samuel, Jared Smith, Omar Wilson and Dedrick Wilson were at Jared Smith's house playing cards and drinking alcohol. At around 7:30 p.m. or 8:00 p.m., Samuel drove them all to Michael Degree's house, which is in the Robertsdale neighborhood. After speaking to Orlando Ager, Samuel and Jared Smith joined the others who were walking toward Miss Sarah's house. Miss Sarah, who is called the "Candy Lady," sold candy, soft drinks, and cigarettes from her house.

When Samuel, Jared Smith, Omar and Dedrick Wilson approached Miss Sarah's house, defendant, along with Ryan Smith and Sherwood Allen, were all standing in Miss Sarah's front yard. At this time, everyone greeted each other and shook hands except defendant would not greet or shake hands with Samuel. Ryan Smith testified he could tell Samuel had been drinking.

Defendant and Samuel began arguing with each other and the argument escalated. Samuel began to circle defendant and pulled a gun from his side.[1] Samuel then put the gun away and walked away.

After Samuel walked away, defendant pulled his gun out and pointed it towards Samuel. Samuel then turned around. Samuel and defendant walked towards each other and defendant pointed the gun at Samuel. Samuel said, "If you're gone pull [that] gun out, you better use it." Defendant shot Samuel. At the time he was shot, Samuel was not holding his gun. Samuel then pulled out his gun and shot defendant. After several shots were fired, defendant ran and Samuel struggled to walk across the street to the parking lot where he fell to the ground.

Shortly thereafter, the police and Cleveland County EMS arrived at the scene. Samuel had been shot in the chest, did not have a pulse, and was not breathing. The autopsy revealed that Samuel suffered three gunshot wounds. The locations of the gunshot wounds were in the left chest, abdomen and right leg. Samuel had an entrance wound on the left part of his chest, with an exit wound much lower on the back. This was likely the fatal wound. Samuel also had an entrance wound on the right portion of his back, with a corresponding exit wound on the front part of his abdomen. The wound on the right leg was an entrance wound, with a corresponding exit wound on the right buttocks.

Jackie Cunningham, defendant's stepfather, approached the police officers at the scene and told the officers they could go to Cunningham's residence at 407 Piedmont Avenue to look for defendant. When they arrived at his residence, Cunningham opened the door to let Officer Benefield and Sergeant Smith come inside. Defendant was in the kitchen bleeding from his chest. Officer Benefield asked defendant where his gun was, and defendant's mother walked to the living room closet and handed him defendant's gun. The gun had two spent shell casings in the cylinder. Defendant's mother also handed Officer Benefield two other spent shell casings from the front porch.

Investigators photographed the crime scene and collected clothing and samples of bloodstains. Projectiles, clothing, and ammunition were also collected. Later, pursuant to consent forms signed by the

---

1. There was conflicting evidence as to whether Samuel pointed his gun at defendant. Jared Smith testified at trial that Samuel pointed the gun at defendant. Ryan Smith and Allen testified that Samuel did not point the gun at anyone and instead, pointed the gun toward the ground or just "flashed it."

Cunninghams and defendant, another search was conducted of Cunningham's residence at 407 Piedmont Avenue. Evidence which was photographed and seized included live and spent ammunition, boxes for handguns, and three plastic bags.

At the close of the State's evidence, the defense moved to dismiss the first-degree murder charge. The trial court denied that motion.

Defendant's evidence tended to show the following: On 17 April 2006, defendant's stepfather, Cunningham, asked defendant to go to Miss Sarah's house to buy a pack of cigarettes. Defendant took a gun with him because it was a dangerous neighborhood. While defendant was speaking with Miss Sarah, Ryan Smith, and Allen, Samuel and his friends approached. Everyone shook hands with each other except for defendant and Samuel. Samuel began yelling and cursing at defendant, pulled out his gun, and put it in defendant's face. Defendant could smell alcohol on Samuel's breath. Defendant believed Samuel was "out of control" and was afraid that Samuel was going to shoot him. Defendant then turned and began to walk away from Samuel when Samuel called his name and defendant turned around. Samuel then shot defendant in the chest. At this point, defendant shot back at Samuel. Defendant then ran inside Miss Sarah's house, exited through the back door, and went home.

Officer Benefield responded to the call reporting the incident. After he arrived at the scene, Officer Benefield walked with Cunningham to his residence to find defendant. Defendant's mother then handed him a .357 Taurus revolver and spent shell casings from her front porch.

When EMS arrived, it was determined that Samuel had a large wound in his chest and did not have a pulse. Samuel was removed from the scene immediately. The breathalyzer scale reading at the time of Samuel's autopsy was 0.07. Defendant was also transported to the hospital and treated for the gunshot wound.

Defendant was found guilty of voluntary manslaughter and sentenced to a term of imprisonment of 72 to 96 months less credit for 490 days spent in confinement prior to the date of the judgment.

On appeal, defendant argues the trial court erred by: (1) allowing the State to introduce eight autopsy photographs at trial in violation of N.C. Rule of Evidence 403; (2) admitting an out-of-court statement made by one of the State's witnesses; (3) denying defendant's motion to suppress certain evidence; (4) allowing the State to intro-

duce surprise testimony; (5) answering certain questions from the jury; and (6) denying defendant's motion to dismiss for insufficient evidence.

## I. Autopsy Photographs

[1] Defendant first contends the trial court erred in allowing the State to introduce into evidence, for illustrative purposes, eight autopsy photographs during the testimony of Dr. Gulledge, a forensic pathologist. Defendant claims that the photographs were repetitive and unnecessary, and that using a monitor to display the photographs exacerbated the prejudicial effect. Defendant further contends the photographs were not probative of any fact at issue in the case and served no evidentiary purpose and thus were admitted in violation of N.C. Rule of Evidence 403. We disagree.

North Carolina Rules of Evidence allow any party to introduce a photograph for substantive purposes after laying the proper foundation and also allow a party to introduce a photograph solely for the purpose of illustrating testimony. N.C. Gen. Stat. § 8-97 (2007). However, even if the evidence is relevant, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, Rule 403 (2007).

In *State v. Hennis,* our Supreme Court explained:

> Photographs are usually competent to explain or illustrate anything that is competent for a witness to describe in words and properly authenticated photographs of a homicide victim may be introduced into evidence under the trial court's instructions that their use is to be limited to illustrating the witness's testimony. Thus, photographs of the victim's body may be used to illustrate testimony as to the cause of death. Photographs may also be introduced in a murder trial to illustrate testimony regarding the manner of killing so as to prove circumstantially the elements of murder in the first degree, and for this reason such evidence is not precluded by a defendant's stipulation as to the cause of death. Photographs of a homicide victim may be introduced even if they are gory, gruesome, horrible or revolting, so long as they are used for illustrative purposes and so long as their excessive or repetitious use is not aimed solely at arousing the passions of the jury.

323 N.C. 279, 283-84, 372 S.E.2d 523, 526 (1988) (citations omitted). It is within the trial court's discretion to determine whether evidence should be excluded under the balancing test of Rule 403 of the North Carolina Rules of Evidence. *Id.* at 285, 372 S.E.2d at 527. This includes determining whether the photographs' probative value outweighs their prejudicial effects and whether the photographs are excessively repetitive. *Id.*

> A matter committed to the discretion of a trial court is not subject to review except upon a showing of an abuse of discretion. A trial court may be reversed for an abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision.

*State v. Thompson*, 314 N.C. 618, 626, 336 S.E.2d 78, 82 (1985) (citations omitted).

In the case *sub judice*, while there was not an issue of the cause of death, there was an issue as to whether defendant shot Samuel in self-defense. The eight autopsy photographs depicted location of wounds and whether they were entrance or exit wounds. Because these photos tended to illustrate the manner of the killing and were in fact probative to the issue of self-defense, the trial court did not abuse its discretion in allowing these photographs to be introduced at trial. Therefore, defendant's argument is without merit, and defendant's assignment of error is overruled.

## II. Prior Statement

**[2]** Defendant next asserts the trial court erred in admitting a prior out-of-court statement made by the State's witness, Ryan Smith, for impeachment purposes. Defendant argues the court erred by not clearly ruling whether the statement was admitted as a consistent or inconsistent statement, that it failed to immediately give a limiting instruction, and that the State offered the statement for substantive purposes. We disagree.

As previously discussed, the proper standard of review for reviewing a trial court's decision to admit or exclude evidence is abuse of discretion. *Brown v. City of Winston-Salem*, 176 N.C. App. 497, 505, 626 S.E.2d 747, 753, *cert. denied*, 360 N.C. 575, 635 S.E.2d 429 (2006).

" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove

the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2007). Generally, hearsay is not admissible unless it is offered for a purpose other than proving the truth of the matter stated. *State v. Irick*, 291 N.C. 480, 498, 231 S.E.2d 833, 844 (1977). However, prior consistent statements of a witness are admissible for corroborative purposes. *State v. Martin*, 309 N.C. 465, 476, 308 S.E.2d 277, 284 (1983). It is also accepted that slight variances between a prior statement and current testimony do not render the corroborative evidence inadmissible. *State v. Burns*, 307 N.C. 224, 230, 297 S.E.2d 384, 387 (1982).

"When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly." N.C. Gen. Stat. § 8C-1, Rule 105 (2007).

In this case, the State called Ryan Smith as a witness who testified regarding the events of 17 April 2006. After questioning Ryan Smith about what occurred, the State sought to introduce a prior statement Smith made to the police regarding the events of 17 April 2006 for corroborative purposes. Defense counsel objected, claiming it was an inconsistent statement, not corroborative, and sought to have a limiting instruction pursuant to N.C. Gen. Stat. § 8C-1, Rule 105, stating that the statement be admitted for impeachment purposes only. The trial court reviewed the prior statement and ruled as follows:

> It is admitted for any purpose other than the truth. It can be used for inconsistencies or corroboration. [The State] is offering it for corroboration. Should [the defendant] wish to use it for inconsistencies, that's fine.

When the jury returned, the court gave a limiting instruction which informed the jury they could not use the previous statement as "substantive proof" but could "consider the conflicts in it or the consistency in it in determining whether to believe or disbelieve the witness's testimony at this trial[.]"

It is clear from the record that Ryan Smith's prior statement described the events of 17 April 2006 in the same manner as he testified during trial. Further, the State offered the prior statement for corroborative purposes, and the court gave a limiting instruction at the time the evidence was offered, and at the conclusion of the trial.

The limiting instruction explained the evidence could not be considered as substantive evidence. Therefore, admitting the prior statement given by Ryan Smith for corroborative purposes was proper under Rule 801(c), and the trial court did not abuse its discretion in admitting that statement. This assignment of error is overruled.

### III. Motion to Suppress

[3] Defendant contends that the trial court erred by denying his motion to suppress evidence obtained from a closet inside the bedroom in which defendant was staying in the Cunninghams' residence at 407 Piedmont Avenue. Although the Cunninghams signed a consent form, defendant claims the Cunninghams did not realize what they were signing. Further, defendant claims that he does not recall signing a consent form, but if he did sign one, it had to have been while he was being treated in the hospital for a gunshot wound. As a result, defendant asserts the consent obtained from him and the Cunninghams was not consensual, voluntary or informed, making the consent invalid, and therefore, the evidence inadmissible. While we find that the trial court's findings of fact as to whether the Cunninghams consented to the search are supported by competent evidence, we are unable to determine from the record whether the trial court's findings support its conclusion that the search of the closet in defendant's bedroom was lawful. Nonetheless, we conclude that if the trial court erred in failing to suppress this evidence, this error was harmless.

> Our review of a denial of a motion to suppress by the trial court is "limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law."

*State v. Barden,* 356 N.C. 316, 340, 572 S.E.2d 108, 125 (2002) (quoting *State v. Cooke,* 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982)), *cert. denied,* 538 U.S. 1040, 155 L. Ed. 2d 1074 (2003). "At a suppression hearing, conflicts in the evidence are to be resolved by the trial court. The trial court must make findings of fact resolving any material conflict in the evidence." *State v. McArn,* 159 N.C. App. 209, 212, 582 S.E.2d 371, 374 (2003) (citation omitted).[2] " 'Once this Court con-

2. The State contends that this issue was not preserved for appellate review because defendant only objected to the evidence during the *voir dire* hearing, rather than when the evidence was introduced during trial. *See T&T Development Co. v.*

cludes that the trial court's findings of fact are supported by the evidence, then this Court's next task "is to determine whether the trial court's conclusion[s] of law [are] supported by the findings." ' " *State v. Brewington*, 352 N.C. 489, 498-99, 532 S.E.2d 496, 502 (2000) (citations omitted), *cert denied*, 531 U.S. 1165, 148 L. Ed. 2d 992 (2001).

Generally, searches inside a home without a warrant are unreasonable unless lawful consent to the search is given. *State v. Smith*, 346 N.C. 794, 798, 488 S.E.2d 210, 213 (1997). This Court has previously determined that officers may rely on the consent of third-parties who have apparent control over the area requested to be searched. *See State v. Jones*, 161 N.C. App. 615, 620, 589 S.E.2d 374, 377 (2003), *disc. review denied, appeal dismissed*, 358 N.C. 379, 597 S.E.2d 770 (2004) (" 'One who shares a house or room or auto with another understands that the partner, may invite strangers[, and that his] privacy is not absolute, but contingent in large measure on the decisions of another. Decisions of *either* person define the extent of the privacy involved[.]' ") (citations omitted). "[T]he question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 36 L. Ed. 2d 854, 862-63 (1973). Consent to a search or seizure need not be express and it is ordinarily sufficient where the officers reasonably believe that consent has been given. 79 C.J.S. Searches, § 152 (2008).

As a general rule, the owner of the property or the person who is apparently entitled to give or withhold consent to search premises may give consent, and a person who has common authority over the premises may also give valid consent to search the premises. *State v. Washington*, 86 N.C. App. 235, 246-47, 357 S.E.2d 419, 427 (1987), *cert. denied*, 322 N.C. 485, 370 S.E.2d 235 (1988); *State v. Kellam*, 48 N.C. App. 391, 394, 269 S.E.2d 197, 199 (1980). A legal property interest in the premises is not dispositive in determining whether a third party has the authority to consent to a search, but rather a third party's authority to consent rests on mutual use, access, or control of the property at issue:

*Southern Nat. Bank of S.C.*, 125 N.C. App. 600, 602, 481 S.E.2d 347, 349, *disc. review denied*, 346 N.C. 185, 486 S.E.2d 219 (1997) (holding that "[a] party objecting to an order granting or denying a motion *in limine*, in order to preserve the evidentiary issue for appeal, is required to object to the evidence at the time it is offered at the trial (where the motion was denied) or attempt to introduce the evidence at the trial (where the motion was granted)"). However, the transcript reveals the trial court noted defendant's continuing objection to the evidence at issue at trial.

"The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched."

*Georgia v. Randolph*, 547 U.S. 103, 110, 164 L. Ed. 2d 208, 219 (2006) (citations omitted).

Likewise, joint occupants generally have common authority to consent, but a joint occupant may not consent to the search of an area designated for another occupant's exclusive use. *See, e.g., U.S. v. Clutter*, 914 F.2d 775, 778 (6th Cir. 1990), *cert. denied*, 499 U.S. 947, 113 L. Ed. 2d 466 (1999) ("[C]ourts are understandably reluctant to approve third-party consent searches of an enclosed space in which the family member targeted for the search has clearly manifested an expectation of exclusivity.").

Moreover, even an overnight guest has a reasonable expectation of privacy in the home in which he stays. 79 C.J.S., *Searches and Seizures*, § 157 (2006). In the case of a guest occupant, a host's authority to consent to a search extends to most objects in plain view within the area of the guest room, but does not extend to "the interiors of every discrete enclosed space capable of search within the area." *United States v. Block*, 590 F.2d 535, 541 (4th Cir. 1978) (holding that where a defendant was a guest occupant in his mother's house, his mother had authority to consent to a search of the bedroom in which the defendant was staying, but did not have authority to consent to a search of a footlocker within that bedroom); *United States v. Buckner*, 473 F.3d 551, 554 (4th Cir. 2007), *cert. denied*, —— U.S. ——, 167 L. Ed. 2d 830 (2007).

Here, the trial court found that defendant lived with his girlfriend up until September of 2005, but after that point, he came to live with his mother at 407 Piedmont Avenue. Thus, it appears that the trial court found that defendant was not merely an overnight guest occupant, but was living at 407 Piedmont; however, the trial court also found that the only "legal occupants" were those listed on the record of Shelby Housing Authority as legal occupants, which included Mrs. Cunningham, Mr. Cunningham, and several grandchildren.

As to the issue of consent, the trial court found that Deputy Lee presented the Cunninghams with a consent to search form at the hospital; that while Mrs. Cunningham claimed that she didn't read the form before signing it, Mrs. Cunningham at least looked at the form because she was the person who wrote the address on the top of the form; and that Mr. Cunningham signed the consent to search form as well. There was competent evidence presented at the hearing to support the findings that the Cunninghams consented. It is not clear from the record, however, whether the trial court found as a fact that defendant consented to the search of the bedroom closet at issue, and defendant denied signing the consent form.[3]

The court then concluded as follows:

> As to the other four items that were recovered from the purported bedroom of the defendant, the Court finds that Mrs. Cunningham as well as Mr. Cunningham, lawful occupants of the residence, gave consent to search the residence and that since [defendant] was not a lawful resident but was merely occupying the room in the residence that he cannot have an expectation [of] privacy that cannot be overruled by his mother or Mr. Cunningham or another lawful resident.

It appears that the trial court may have misinterpreted the law in concluding that the Cunninghams as co-occupants of the residence could waive defendant's expectation of privacy in a room that was devoted exclusively to his use. There are, however, no express findings as to whether the room and closet were used exclusively by defendant, which makes appellate review difficult.

While we are not able to engage in meaningful appellate review based upon the trial court's findings of fact, we need not remand for additional findings. Assuming *arguendo* that the trial court erred in failing to suppress the gun box and bullets that were seized from such closet, not every error, even of a constitutional magnitude, requires reversal. "A violation of the defendant's rights under the Constitution of the United States is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt. The burden is upon the State to demonstrate, beyond a reasonable doubt, that the error was harmless." N.C. Gen. Stat. § 15A-1443(b) (2007). Here, the State's

---

3. The trial court merely found as follows: "The name of the defendant appears on the form but he has no recollection of signing it and denies that is his signature. For credibility purposes, he's also denied that and other items were signed by him that have been presented in court and then he recanted . . . the testimony."

**STATE v. EARLY**

[194 N.C. App. 594 (2009)]

properly admitted evidence included, *inter alia*, the testimony of several witnesses who saw defendant shoot the victim, the gun that Mrs. Cunningham voluntarily retrieved from the living room closet which contained two spent shell casings in the cylinder, as well as two spent shell casings that Mrs. Cunningham retrieved from the front porch. Thus, the additional ammunition and gun box seized from defendant's closet was merely cumulative evidence, and it is highly improbable that the introduction of this evidence had any effect on the outcome of the trial. Given the overwhelming evidence that defendant shot the victim with his gun, the State has carried its burden in establishing that any constitutional error was harmless beyond a reasonable doubt. This assignment of error is overruled.

## IV. Discovery

[4] Defendant next contends that the State failed to provide exculpatory material to the defense upon request. Four months prior to the trial, pursuant to N.C. Gen. Stat. §§ 15A-902, -903 (2007), defendant requested that the State provide all exculpatory evidence, including a complete list of all persons interviewed by law enforcement or the district attorney. Defendant claims there is no evidence that defendant was provided with notice that witness Sherwin Allen would testify at trial, that defendant had no knowledge of this evidence prior to trial, and that Allen's testimony for the State was exculpatory in nature. Defendant, however, did not make an objection to Sherwin Allen's testimony during trial nor did he raise any objection regarding allegedly suppressed exculpatory evidence. "Having failed to draw the trial court's attention to the alleged discovery violation, the defendant denied the court an opportunity to consider the matter and take appropriate steps." *State v. Herring*, 322 N.C. 733, 748, 370 S.E.2d 363, 373 (1988). As such, defendant cannot properly contend that the trial court's failure to impose sanctions is an abuse of discretion. *State v. Taylor*, 332 N.C. 372, 384, 420 S.E.2d 414, 421 (1992). This assignment of error is overruled.

## V. Jury Inquiries

[5] Defendant next argues the trial court erred in responding to the jury's inquiries during deliberation by reinstructing the jury on second-degree murder and voluntary manslaughter. Specifically, defendant claims the jury's inquiry reflected that the jurors were confused regarding the appropriate burden of proof for the self-defense theory and that the trial court offered no guidance to the jury on this question.

Here, approximately forty minutes after the jury retired to deliberate, the following note was received from the jury stating, "We need a reading of the difference between second-degree murder and voluntary manslaughter." The trial court then suggested to both parties that it reread the pattern jury instructions for second-degree murder, voluntary manslaughter, and self-defense. The State did not object. Defense counsel likewise did not object and even stated, "I think that's it[.]" The judge then re-read the jury charge for second-degree murder, voluntary manslaughter, and the burden for self-defense. The jury then returned to the jury room to resume deliberations, and neither the State nor defense counsel requested any corrections be made to the charge. Because the record indicates that defendant made no objection at trial to these instructions, this argument has not been preserved for our review. N.C. R. App. P. 10(b)(1) (2008). Defendant does not argue plain error, and we hold that there is none. N.C. R. App. P. 10(c)(4). This assignment of error is therefore overruled.

## VI. Motion to Dismiss

[6] By his final assignment of error, defendant contends that the trial court erred by denying his motion to dismiss the first-degree murder charge for insufficiency of the evidence. Specifically, defendant argues that the State's evidence was insufficient to establish that defendant acted with premeditation, deliberation or malice. We disagree.

When a defendant in a criminal case makes a motion to dismiss based on insufficiency of the evidence, it must be determined "whether substantial evidence of each essential element of the offenses charged has been presented." *Herring*, 322 N.C. at 738, 370 S.E.2d at 367.

> Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. In determining this issue, the evidence must be viewed in the light most favorable to the State, giving the State every reasonable inference which may be drawn therefrom. If there is substantial evidence—whether direct, circumstantial, or both—to support a finding that the offense charged has been committed and that the defendant committed it, a motion to dismiss should be denied.

*Id.* However, "if the evidence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion to dismiss

should be allowed." *State v. Earnhardt*, 307 N.C. 62, 66, 296 S.E.2d 649, 652 (1982).

"Murder in the first degree is the unlawful killing of another human being with malice and with premeditation and deliberation." *State v. Bonney*, 329 N.C. 61, 77, 405 S.E.2d 145, 154 (1991). "Malice is implied in law from the intentional killing with a deadly weapon." *State v. McCain*, 6 N.C. App. 558, 561, 170 S.E.2d 531, 533 (1969).

> No fixed length of time is required for the mental processes of premeditation and deliberation constituting first-degree murder. Premeditation means thought beforehand for some length of time however short. Deliberation does not require brooding or reflection for any applicable length of time but connotes the execution of intent to kill in a cool state of blood without legal provocation in furtherance of a fixed design. Premeditation and deliberation are seldom susceptible of direct proof, but they may be inferred from the circumstantial evidence.

*State v. Hutchins*, 303 N.C. 321, 344, 279 S.E.2d 788, 802 (1981).

In the case *sub judice*, when viewing the evidence of malice, premeditation, and deliberation in the light most favorable to the State, we find there was sufficient evidence. The State's evidence tended to establish that there was an argument between defendant and Samuel in which Samuel took out his gun, put it back in his pocket, and then walked away. Jared Smith testified that defendant said to his friends, "I know [Samuel] just didn't." Defendant then "got in Samuel's face," pulled out his gun and put it to Samuel's head. Samuel said to defendant, "You're gone have to shoot me." Defendant then shot Samuel. The shots were fired continuously.

Based on the nature and number of shots, the fact that defendant raised and aimed his gun at Samuel, the statements made prior to the shooting and the fact that Samuel walked away before defendant shot him, there was substantial evidence to support a finding of malice, premeditation and deliberation. As such, the trial court did not err in denying defendant's motion to dismiss. This assignment of error is without merit and is overruled.

Having reviewed each of defendant's assignments of error carefully, we find no prejudicial error in defendant's conviction of voluntary manslaughter.

No prejudicial error.

Judges BRYANT and STEPHENS concur.

Concurred prior to 31 December 2008.