IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA20-656

Filed 16 May 2023

Guilford County, No. 18 CRS 86180-82

STATE OF NORTH CAROLINA

v.

KEITH D. MAHATHA, Defendant.

Appeal by Defendant from judgments entered 13 February 2020 by Judge Susan E. Bray in Guilford County Superior Court. Heard in the Court of Appeals 26 May 2022.

*Attorney General Joshua H. Stein, by Assistant Attorney General Sarah N. Tackett, for the State.*

*Richard J. Costanza for defendant-appellee.*

MURPHY, Judge.

Under N.C.G.S. § 15A-910, a criminal defendant may move for sanctions, including a mistrial, where the State fails to abide by its obligation to timely disclose exculpatory evidence. However, sanctions under N.C.G.S. § 15A-910 are not mandatory, even where a disclosure violation occurs. Here, where the only files reviewable on appeal and not timely disclosed by the State were recorded calls from a jail with no exculpatory value, the trial court did not abuse its discretion in denying Defendant's motion for a mistrial on the basis that the State violated its duty to

disclose.

Additionally, where a defendant claims on appeal that he received ineffective assistance of counsel due to his counsel conceding his guilt without his consent, a new trial is warranted only where counsel's statements to the jury cannot logically be interpreted as anything other than an implied concession of guilt to a charged offense. Here, the Record reveals that defense counsel neither expressed nor implied that there was no other conclusion than Defendant's guilt of one of the charged crimes, nor did counsel completely omit any of the crimes of which he asked the jury to find Defendant not guilty during his closing argument. We therefore conclude that defense counsel did not concede Defendant's guilt and that, consequently, Defendant did not receive ineffective assistance of counsel.

## BACKGROUND

This case arises out of Defendant Keith D. Mahatha's convictions for communicating threats, possession of a firearm by a felon, assault on a female, and assault with a deadly weapon inflicting serious injury ("AWDWISI") on 13 February 2020. Defendant is alleged to have assaulted his then-girlfriend because she would not show him her phone.

Around 12:30 a.m. on 14 October 2018, Defendant and the victim arrived home to the victim's second-floor apartment in Greensboro where they had resided together since June 2018. Defendant had been upset with her earlier that day because he wanted to access her personal cell phone, and a heated argument ensued once the two

were at home and Defendant continued to demand access. Tired and wanting to go to bed, the victim got into bed to go to sleep for the night. Defendant then allegedly grabbed his gun, pointed it at the victim's head, and stated, "[b]itch, you're going to unlock this phone, or I'm going to kill you," before hitting her forehead with the butt of his gun—a gun the victim testified that Defendant carried "on him just about at all times." The victim then screamed and attempted to get away from Defendant by hiding in her bathroom, but Defendant grabbed her and dragged her into the living room where he again demanded she unlock her phone. She refused to unlock the phone, and Defendant responded by punching her in the face four or five times, blackening her eye.

Fearing Defendant would kill her, the victim slid her phone underneath a couch and ran outside the apartment, injuring her ankle jumping down the last few stairs after she believed she heard him open the door and come after her. The victim, wearing only the undergarments she had worn to bed, fearfully hobbled on one foot into the parking lot and hid underneath a car. She was found by neighbors who lived in her apartment complex and who eventually called 911. Although police did not find Defendant that evening, arrest warrants for Defendant were issued for communicating threats, assault by pointing a gun, AWDWISI, assault on a female, possession of firearm by a felon, and attempted breaking or entering. On 7 January 2019, a Guilford County Grand Jury returned true bills of indictment charging Defendant with these offenses.

Almost a week before trial, the State provided defense counsel with 16 officer bodycam footage videos, a police report, and handwritten notes from an interview with the victim. The State asked counsel if he needed more time to prepare, but defense counsel "reluctantly indicated" that the time remaining under the then-current schedule was sufficient. When the State indicated its intent to play portions of the bodycam footage for the jury, defense counsel stated that he had no "discovery-related objections to anything." Defense counsel also did not object to the admission of the footage when later offered into evidence, and the evidence was admitted.

On the first morning of trial, the State provided an additional 63 photographs of the crime scene and the victim's injuries, as well as a lab report from an analyst with the Greensboro Police Department, all of which were sent to the State only after the State became aware that morning that the pictures had been inadvertently mislabeled under a different case number. Defense counsel again stated that he had no "discovery-related objections to anything" on the first day of trial and did not object to the admission of this further evidence when introduced by the State at trial. The evidence was admitted.

On the second day of trial, the State indicated that it had come into possession of 29 recordings of phone calls Defendant made to the victim while he was in jail and provided the calls to defense counsel. The prosecutor did not acquire the recordings until the second day of the trial because he did not realize that the calls occurred

while Defendant was in custody and were therefore likely recorded.[1]  The State expressed its intention to play only one recording that had been previously referred to during the victim's testimony.  After listening to the recording during the lunch break, defense counsel raised a discovery-related objection and requested the trial court exclude the call as the sanction for the State's allegedly untimely disclosure. Nonetheless, the trial court allowed the State to play the recording for the jury.

Defendant moved for a mistrial at the close of the State's evidence, alleging violations of due process rights to meaningful cross-examination and a fair trial due to the alleged discovery violations.  The trial court denied Defendant's mistrial motion.  Defense counsel then indicated to the court that Defendant did not wish to testify in his own defense and did not intend to present any evidence.  The trial proceeded to closing arguments, where defense counsel made several statements— reproduced *infra*—that Defendant argues implicitly conceded his guilt of assault on a female.

On 13 February 2020, Defendant was found guilty of communicating threats, AWDWISI, assault on a female, and possession of a firearm by a felon.[2]  Defendant timely appeals.

## **ANALYSIS**

---

[1] The prosecutor had instead believed the calls occurred in the three-day window between the alleged incident and Defendant's arrest.

[2] Defendant, however, was acquitted of attempted breaking or entering and assault by pointing a gun.

Defendant presents two main arguments on appeal: first, that the trial court abused its discretion by denying his motion for a mistrial; and, second, that he received ineffective assistance of counsel when his trial counsel implicitly conceded he was guilty of assault on a female.

**A. Motion for Mistrial**

Defendant argues the trial court abused its discretion by denying his motion for a mistrial, which was premised upon the State's late disclosure of discoverable material under N.C.G.S. § 15A-910. The material at issue included "(1) 16 body-worn camera videos on 5 February 2020, the Thursday preceding the start of the Defendant's trial; (2) 63 crime scene photographs and a lab report on 11 February 2020, the first day of trial; and (3) 29 recorded jail phone calls between [] Defendant and [the victim] on 12 February 2020, the second day of trial."

Under N.C.G.S. § 15A-1061, a trial court "must declare a mistrial upon the defendant's motion if there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, resulting in substantial and irreparable prejudice to the defendant's case." N.G.G.S. § 15A-1061 (2021). "We review a trial court's denial of a defendant's motion for mistrial for abuse of discretion." *State v. Crump*, 273 N.C. App. 336, 339 (2020) (citing *State v. Hester*, 216 N.C. App. 286, 290 (2011)), *disc. rev. denied*, 377 N.C. 567 (2021); *see also State v. King*, 343 N.C. 29, 44 (1996) ("It is well settled that a motion for a mistrial and the determination of whether [the] defendant's case has been irreparably and

substantially prejudiced is within the trial court's sound discretion."). "'Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision.'" *State v. Hauser*, 271 N.C. App. 496, 498 (2020) (quoting *State v. Hennis*, 323 N.C. 279, 285 (1988)).

Defendant argues that, because the State violated its statutory duty of disclosure and gave Defendant's counsel insufficient time to prepare his defense, the trial court abused its discretion by denying Defendant's motion for a mistrial. According to Defendant, in determining whether he was prejudiced, the court "did not consider the cumulative effect o[f] the late production of discovery on the eve of and during trial—material that would require hours of review by defense counsel." Defendant contends prejudice should be presumed from the late production because there was no likelihood his counsel could have provided effective assistance given the large amount of evidence and the insufficient opportunity for counsel to assess the material's evidentiary value, conduct any necessary further investigation, and adjust counsel's existing trial strategy.

In response to Defendant's argument, the State contends the trial court did not abuse its discretion in denying the motion for mistrial because the State did not violate its duty to disclose; and, consequently, the trial court properly allowed the admission of the body camera video, crime scene photos, lab report, and phone

recordings. The State also contends that, even if the call was erroneously admitted, Defendant was not prejudiced and the error was harmless beyond a reasonable doubt.

The State's statutory duty to disclose is detailed in N.C.G.S. § 15A-903, which provides the following in pertinent part:

> (a) Upon motion of the defendant, the court must order:
>
> (1) The State to make available to the defendant the complete files of all law enforcement agencies, investigatory agencies, and prosecutors' offices involved in the investigation of the crimes committed or the prosecution of the defendant.
>
> a. The term "file" includes the defendant's statements, the codefendant's statements, witness statements, investigating officers' notes, results of tests and examinations, or any other matter or evidence obtained during the investigation of the offenses alleged to have been committed by the defendant.

N.C.G.S. § 15A-903(a)(1)(a.) (2022). Moreover, under N.C.G.S. § 15A-903(b), if "the State voluntarily provides disclosure . . . , the disclosure shall be to the same extent as required by [N.C.G.S. § 15A-903(a)]." N.C.G.S. § 15A-903(b) (2022). "If at any time during the course of the proceedings the court determines that a party has failed to comply[,]" the court "may (1) [o]rder the party to permit the discovery or inspection, [] (2) [g]rant a continuance or recess, [] (3) [p]rohibit the party from introducing evidence not disclosed, [] (3a) [d]eclare a mistrial, [] (3b) [d]ismiss the charge, with or without prejudice, or (4) [e]nter other appropriate orders." N.C.G.S. § 15A-910(a) (2021). "Prior to finding any sanctions appropriate, the court shall consider both the

materiality of the subject matter and the totality of the circumstances surrounding an alleged failure to comply . . . ." N.C.G.S. § 15A-910(b) (2021).

We must therefore determine whether the State failed to comply with its statutory duty to disclose discoverable material and, if so, whether the trial court abused its discretion by not granting Defendant's motion for a mistrial as an appropriate sanction pursuant to N.C.G.S. § 15A-910(a)(3a). As an initial matter, however, we first address which of the alleged discovery violations we may review on appeal, as the State argues appellate review of Defendant's arguments concerning the bodycam footage, crime scene photographs, and lab report is improper given Defendant's failure to object to their admission at trial.

**1. Reviewability**

As stated earlier, the disclosed material at issue falls into three categories: body camera videos, which were disclosed shortly before the start of the trial; photographs and a lab report, which were disclosed on the first day of trial; and Defendant's recorded jail phone calls, which were disclosed on the second day of trial. However, our review is limited only to the material to which Defendant raised an objection during trial. *See, e.g.*, *State v. Grooms*, 353 N.C. 50, 76 (2000); *State v. Hartley*, 212 N.C. App. 1, 5-6, *disc. rev. denied*, 365 N.C. 339 (2011).

"When the defendant does not inform the trial court of any potential unfair surprise, the defendant cannot properly contend that the trial court's failure to impose sanctions is an abuse of discretion." *State v. Taylor*, 332 N.C. 372, 384 (1992).

Here, Defendant did not object during trial to the admission of the bodycam footage, photographs, or lab report, nor did he raise any concerns about untimely disclosure of this evidence prior to the start of trial. When it provided defense counsel the bodycam footage, the prosecution asked if the defense needed more time to prepare, but counsel denied needing a continuance to prepare for trial. On the morning of trial, when the State indicated its intent to play portions of the footage for the jury and introduce several of the photographs into evidence, defense counsel stated that he had "no discovery-related objections to anything." When the videos and pictures were later offered into evidence, defense counsel stated again that he had no objection, and the evidence was admitted.[3] "'Having failed to draw the trial court's attention to the alleged discovery violation, [Defendant] denied the court an opportunity to consider the matter and take appropriate steps.'" *State v. Early*, 194 N.C. App. 594, 605 (2009) (quoting *State v. Herring*, 322 N.C. 733, 748 (1988)). "'As such, [D]efendant cannot properly contend that the trial court's failure to impose

---

[3] In response to the State's contention that he failed to raise an objection concerning the bodycam footage, photographs, and lab report, Defendant argues that his trial counsel's decision to not pursue sanctions for the alleged late disclosure of this material was "consistent with Rule 12 of the North Carolina General Rules of Practice, which requires lawyers to treat opposing counsel with 'candor and fairness.'" According to Defendant, his trial counsel "could have sought the full gamut of remedies set out in [N.C.G.S.] § 15A-910" but instead "overlooked the State's late disclosures and did not seek the imposition of sanctions." Defendant claims his trial counsel's "professionalism should not shield the State from scrutiny over their late disclosures and its impact on the ability to effectively represent [] Defendant." However, well-established law demands defense counsel raise an objection to bring the discovery issue to the trial court's attention and, thus, to allow us to review the denial of Defendant's motion for an abuse of discretion. *See State v. Herring*, 322 N.C. 733, 748 (1988); *Taylor*, 332 N.C. at 384.

sanctions is an abuse of discretion.'" *Id.* (quoting *Taylor*, 332 N.C. at 384). We therefore cannot consider discovery violations concerning the bodycam footage, crime scene photographs, and lab report.

However, as the State concedes on appeal, Defendant did raise an objection to the admission of his recorded jail calls. Accordingly, we review Defendant's arguments related to the calls, which requires us to determine whether the State violated its duty to disclose and, if so, whether the trial court abused its discretion in rejecting the requested sanction of a mistrial. *See supra.*

**2. Alleged Discovery Violation**

With respect to the duty to disclose under N.C.G.S. § 15A-903, "Defendant's rights to discovery are statutory. Constitutional rights are not implicated in determining whether the State complied with these discovery statutes."[4] *State v. Ellis*, 205 N.C. App. 650, 655 (2010). "'There is no general constitutional or common law right to discovery in criminal cases.'" *Id.* (quoting *State v. Haselden*, 357 N.C. 1, 12, *cert. denied*, 540 U.S. 988 (2003)). "'The purpose of discovery under our statutes is to protect the defendant from unfair surprise by the introduction of evidence he cannot anticipate.'" *Id.* (quoting *State v. Payne*, 327 N.C. 194, 202 (1990), *cert. denied*, 498 U.S. 1092 (1991)). "[O]nce . . . the State has provided discovery there is a continuing duty to provide discovery and disclosure." *Id.*

---

[4] Defendant has not raised any constitutional arguments concerning the State's duty to disclose.

Defendant contends that his counsel was not, as required by N.C.G.S. § 15A-903(a)(1), provided with the recorded jail phone calls that were "in the possession of the various law investigative agencies having custody of the Defendant or those charged with investigating the offenses for which he stood trial." According to Defendant, during trial, both the prosecutor and defense counsel noted a voluntary discovery request was made on Defendant's behalf in April 2019, and the State's continuing discovery obligation was deemed to have been made under an order of the trial court once the prosecution turned over some evidence in response to the request. Defendant argues that he "was entitled to this material in a timely manner" because exculpatory evidence must be provided in such a manner that defense counsel has sufficient time to "effectively use it." (Emphasis omitted.)

We do not accept one of the critical premises underlying this argument; namely, that the calls were exculpatory. Defendant claims the "exculpatory value" of the calls—which were Defendant's own conversations—"would have been a factor in the decision to offer defense evidence; specifically, defense counsel and [] Defendant could have decided [] Defendant would testify, after which defense counsel could seek the admission of the statements made by [] Defendant during the calls which could corroborate his trial testimony." But Defendant's appellate counsel, after having months between his appointment and the date on which he filed Defendant's brief, does not identify any single specific statement that would have corroborated Defendant's testimony as to any contested issue at trial. Defendant offers nothing

more than speculation to support his claim that he may have chosen to testify if his counsel was given more time to listen to the calls, and Defendant has not identified any particular testimony he could have provided that would have been exculpatory when paired with the content of any of the calls. Moreover, although Defendant identifies the potential role of the calls in impeaching the alleged victim's testimony at trial as a separate basis for their exculpatory value, Defendant has not pointed to any statement made by the victim within the recordings that contradicted her testimony or otherwise had impeachment value.

Defendant's inability to identify the evidence's exculpatory value demonstrates that the trial court did not abuse its discretion; despite the volume of material, an inability to access a series of non-exculpatory phone calls would not have "result[ed] in substantial and irreparable prejudice to [] [D]efendant's case." N.C.G.S. § 15A-1061 (2021); *cf. State v. Canady*, 355 N.C. 242, 252-53 (2002) (holding exculpatory evidence was improperly withheld where there was a "reasonable probability that if [the] defendant had access to informants who had names of others involved in the [crime at issue], such information could have swayed the jury to reach a different outcome").

Nor does the statutory scheme governing the State's duty to disclose provide any further basis to find the trial court abused its discretion. As stated earlier, when the State fails to timely comply with its duty of disclosure, the trial court "*may* (1) [o]rder the party to permit the discovery or inspection, [] (2) [g]rant a continuance or

recess, [] (3) [p]rohibit the party from introducing evidence not disclosed, [] (3a) [d]eclare a mistrial, [] (3b) [d]ismiss the charge, with or without prejudice, or (4) [e]nter other appropriate orders." N.C.G.S. § 15A-910(a) (2021) (emphasis added). The plain language of the statute makes clear that the trial court also has the discretion not to enter *any* sanctions. *See* N.C.G.S. § 15A-910(d) (2021) (emphasis added) ("*If the court imposes any sanction*, it must make specific findings justifying the imposed sanction."). Accordingly, despite the State's untimely disclosure, the trial court ruled well within the options provided to it under N.C.G.S. § 15A-910 not to declare a mistrial.

## B. Effective Assistance of Counsel

Defendant next argues he received ineffective assistance of counsel due to his trial counsel's alleged implicit concession that he was guilty of assault on a female. Defendant relies on *State v. Harbison*, 315 N.C. 175 (1985), and *State v. McAllister*, 375 N.C. 455 (2020), to contend he received *per se* ineffective assistance of counsel. At oral argument, Defendant's appellate counsel confirmed that this ineffective assistance argument is limited to alleging *Harbison* error.

### 1. Standard of Review

"We review *per se* ineffective assistance of counsel claims *de novo*." *State v. Moore*, 286 N.C. App. 341, 345 (2022) (citing *State v. Harbison*, 315 N.C. 175 (1985)); *see also State v. Wilson*, 236 N.C. App. 472, 475-78 (2014) (applying the *de novo* standard to the defendant's claim that his trial counsel's statements amounted to

*Harbison* error).

**2. *Harbison* Error**

We recently provided a concise description of the applicable law for cases where

the defendant has alleged ineffective assistance of counsel based on a *Harbison* error:

> A defendant claiming ineffective assistance of counsel must ordinarily show both that counsel's performance was deficient, and that counsel's deficient performance prejudiced the defense. [*Strickland v. Washington*, 466 U.S. 668, 687 (1984)]. However, "ineffective assistance of counsel, per se in violation of the Sixth Amendment, has been established in every criminal case in which the defendant's counsel admits the defendant's guilt to the jury without the defendant's consent." *Harbison*, 315 N.C. at 180[] . . . . Statements by defense counsel "must be viewed in context to determine whether the statement was, in fact, a concession of defendant's guilt of a crime[.]" *State v. Mills*, 205 N.C. App. 577, 587[] . . . (2010) (citation omitted). Where "defense counsel's statements to the jury cannot logically be interpreted as anything other than an implied concession of guilt to a charged offense, *Harbison* error exists unless the defendant has previously consented to such a trial strategy." *[McAllister*, 375 N.C. at 475]. "[T]he trial court must be satisfied that, prior to any admissions of guilt at trial by a defendant's counsel, the defendant must have given knowing and informed consent, and the defendant must be aware of the potential consequences of his decision." *State v. Foreman*, 270 N.C. App. 784, 790[] . . . (2020) (citation omitted).

*Moore*, 286 N.C. App. at 345. Our Supreme Court has "emphasize[d] that a finding

of *Harbison* error based on an implied concession of guilt should be a rare occurrence."

*McAllister*, 375 N.C. at 476.

In *McAllister*, our Supreme Court "extended *Harbison* to instances where

defense counsel does not expressly request that the jury convict the defendant of a charge, but impliedly concedes the defendant's guilt to a charged offense." *State v. Guin*, 282 N.C. App. 160, 169 (2022). In that case, the defendant was tried for assault on a female, assault by strangulation, second-degree sexual offense, and second-degree rape. *See McAllister*, 375 N.C. at 458-59. In its case-in-chief, the State played for the jury a videotaped police interview with the defendant in which the defendant admitted that he and the victim got into a rough "tussle," but he denied sexually assaulting her. *Id.* at 458. The defendant also stated in the interview, "[I]f I smacked [her] ass up, then I smacked [her]; I can take the rap for that." *Id.* During his closing argument, the defendant's counsel referenced the defendant's statements from the interview. Defense counsel stated to the jury, "[T]hings got physical. You heard him admit that he did wrong, God knows he did. They got in some sort of scuffle or a tussle or whatever they want to call it, she got hurt, he felt bad, and he expressed that to detectives." *Id.* at 460. Defense counsel told the jury that the defendant "was being honest" during the interview. *Id.* Throughout his closing argument, "counsel never expressly mentioned [or asked the jury to find the defendant not guilty of] the charge of assault on a female but repeatedly addressed the other three charges against [the] defendant." *Id.* at 473.

In reviewing the remarks, our Supreme Court held that *Harbison* error occurs not only where there is an express concession of guilt, but also where counsel's statements "cannot logically be interpreted as anything other than an implied

concession of guilt to a charged offense":

> [A] *Harbison* violation . . . encompass[es] situations in which defense counsel impliedly concedes his client's guilt without prior authorization.
>
> . . .
>
> Although an overt admission of the defendant's guilt by counsel is the clearest type of *Harbison* error, it is not the exclusive manner in which a per se violation of the defendant's right to effective assistance of counsel can occur. In cases where—as here—defense counsel's statements to the jury cannot logically be interpreted as anything other than an implied concession of guilt to a charged offense, *Harbison* error exists unless the defendant has previously consented to such a trial strategy. In such cases, the defendant is prejudiced in the same manner and to the same degree as if the admission of guilt had been overtly made. Thus, our decision in this case is faithful to the rationale underling *Harbison*.
>
> . . .
>
> [U]nder *Harbison* and its progeny[,] defense counsel was required to obtain the informed consent of [the] defendant before embarking on such a strategy that implicitly acknowledged to the jury his guilt of a separately charged offense.

*Id.* at 473-75. Our Supreme Court concluded that the defense counsel's statements constituted error under *Harbison* as "an implied concession of guilt." *Id.* at 476.

In concluding that the defense counsel's statements constituted *Harbison* error, our Supreme Court considered the defense counsel's statements to implicitly admit the defendant's guilt for three core reasons. "First, defense counsel attested to the accuracy of the admissions made by [the] defendant in his videotaped statement

- 17 -

by informing the jurors that [the] defendant was 'being honest.'" *Id.* at 474. "Second, [the] defendant's attorney not only reminded the jury that [the] defendant had admitted he 'did wrong' during the altercation in which [the victim] got 'hurt,' but defense counsel then proceeded to also state his own personal opinion that 'God knows he did [wrong]'—thereby implying that there was no justification for [the] defendant's use of force against [the victim]." *Id.* Third, "at the very end of his closing argument, defense counsel asked the jury to find [the] defendant not guilty of every offense for which he had been charged except for the assault on a female offense." *Id.*

Here, Defendant argues that statements made by his defense counsel "track[] very closely" with those made by the defense counsel in *McAllister*. Defendant cites two statements from his counsel's closing argument. First, immediately after beginning the closing with "[l]adies and gentlemen, [Defendant] is not guilty of assault with a deadly weapon inflicting serious injury, he's not guilty of possession of a firearm by a felon, he's not guilty of assault by pointing a gun, because [Defendant] did not have a firearm[,]" Defendant's counsel made the following argument:

> Now, I -- I somewhat envy you because of the important role that you're about to serve, but I also empathize with how difficult what you're about to do is. Because I told you in the beginning that this was a case about nuance. Not everything is this sexy black-and-white scenario of good versus evil. This is a case where you may find that [Defendant] did something, did something terrible, did something to someone who maybe didn't deserve it. No one does. No one deserves to have what may or may not have happened to Ms. Golden. Nobody. And no one is going to stand up here and tell you that it's okay or that any of that

behavior, if true, is okay. It's not.

Second, later in his closing argument, Defendant's counsel stated,

> You know what? You can believe that he committed an assault. I'm not asking you to find him guilty of assault on a female, but you can believe that he committed a non-gun-related assault. And everything the State said still makes sense. Honestly, it makes better sense. It explains why he didn't try to get the hell out of Dodge immediately and toss a gun. If you believe that [Defendant] went too far, committed an assault, and then tried to go find her, whether it was to continue the argument or not, you could believe that if the man's on probation and the police roll up, he's going to get in trouble for that. So yes, of course, he would leave. It doesn't -- it doesn't mean he's leaving just because there's a gun.

These are the only statements on which Defendant relies to argue his counsel implicitly conceded he was guilty of assault on a female.

Defendant asserts several reasons for why these statements parallel those in *McAllister*. First, Defendant claims counsel told the jury they could find the Defendant did something terrible, which was a "not-so-subtle reference to the Defendant assaulting [the victim]." Defendant contends that counsel provided his personal opinion about Defendant's actions by telling the jury that no one deserved what happened to the victim and that "no one is going to stand up here and tell you that it's okay or that any kind of that behavior, if true, is okay. It's not." According to Defendant, in *McAllister*, the Court was troubled by defense counsel's similar offering of his personal opinion about his client's culpability for assault. Second, Defendant claims "[a]nother commonality is that defense counsel in both cases urged

the respective juries to find their clients not guilty of the more serious offenses." Defendant argues that his counsel "only made a cursory argument about the [assault on a female] count, saying that while he was not telling the jury to convict his client for that offense (and attempted breaking or entering and communicating threats), they should '[d]o what you believe the law requires you to do.'" We are not persuaded by either reason.

First, Defendant is incorrect that his counsel referenced Defendant as assaulting the victim and that his counsel gave his personal opinion implying there was no conclusion other than Defendant's guilt, as in *McAllister*. A core element of our Supreme Court's reasoning in *McAllister* was that the defense counsel "not only reminded the jury that [the] defendant had admitted he 'did wrong' during the altercation in which [the victim] got 'hurt,' but defense counsel then proceeded to also state his own personal opinion that 'God knows he did [wrong]'—thereby implying that there was no justification for [the] defendant's use of force against [the victim]." *McAllister*, 375 N.C. at 474; *see also Guin*, 2022-NCCOA-133, at ¶ 37 (referring to this reason as one of "three core reasons" the Court found the statements problematic). Here, the two excerpts from closing arguments cited by Defendant neither express nor imply that there was no other outcome other than that Defendant was guilty of assault on a female. Instead, Defendant's counsel expressly stated, "I'm not asking you to find him guilty of assault on a female." Counsel made this clear after he stated that "you can believe that he committed a non-gun-related assault[,] .

. . [a]nd everything the State said still makes sense." Nor does the other excerpt cited by Defendant concede Defendant's guilt, explicitly or implicitly; rather, at worst, it expresses that the jury "may or may not" find Defendant guilty of an offense.[5] As such, the statements do not rise to the level of those in *McAllister*.

Second, while Defendant's counsel urged the jury to find Defendant not guilty of the more serious offenses, Defendant himself makes clear that counsel did not completely omit the assault on a female count from the counts on which he asked the jury to find Defendant not guilty. In contrast, as our Supreme Court expressly stated in *McAllister*, defense counsel "overtly s[ought] a not guilty verdict as to the three more serious charges" but "omitt[ed] mention of the assault on a female charge" by "not expressly mentioning that charge *at all during the entire closing argument . . . .*" *McAllister*, 375 N.C. at 474 (emphasis added). The Court thus concluded that "the only logical inference in the eyes of the jury would have been that defense counsel was implicitly conceding defendant's guilt as to that charge." *Id.* Here, however, we

---

[5] We are cognizant that some of defense counsel's remarks may have implicitly acknowledged the *likelihood* that the jury would believe the State as to some charges and not others. For example, before clarifying that he was "not asking [the jury] to find [Defendant] guilty of assault on a female[,]" defense counsel remarked that the jury "can believe that [Defendant] committed a non-gun-related assault[,] . . . [a]nd everything the State said still makes sense." However, we emphasize that the distinction between differentiating charges by evidentiary support, as defense counsel did in this case, and an *actual* concession, express or implied, is more than a formality or commitment to literalism. Just as critical to the effective performance of counsel as the commitment not to concede on a client's behalf is the ability to argue nuance to a jury that may otherwise—as defense counsel suggested—be tempted to think in "black-and-white" terms. Without the ability to argue, in the hypothetical, that a jury could find a client guilty of one charge and not another, a criminal defense attorney's work would be reduced to a parody of itself, hamstringing the credibility of its own arguments.

cannot say that the only logical inference to be drawn from defense counsel's argument was a concession of Defendant's guilt as to the assault on a female charge because counsel did not completely omit mention of this charge; indeed, he asked the jury to "return a verdict of not guilty" shortly after discussing this charge in the closing argument. We therefore conclude that Defendant's reliance on *McAllister* is unconvincing, and we do not believe Defendant has demonstrated *Harbison* error.

## CONCLUSION

For the foregoing reasons, Defendant has not shown that the trial court abused its discretion by denying his motion for a mistrial, nor has he demonstrated that his trial counsel implicitly conceded his guilt of assault on a female.

NO ERROR.

Judges TYSON and ZACHARY concur.