STATE OF NORTH CAROLINA, PLAINTIFF v. MICHAEL LEON WILKERSON, DEFENDANT

No. COA08-819

(Filed 5 May 2009)

**Homicide— first-degree murder—motion to dismiss—sufficiency of evidence—identity as perpetrator**

The trial court did not err by denying defendant's motion to dismiss the charge of first-degree murder even though defendant contends there was insufficient evidence of his identity as the perpetrator of his ex-wife's murder because: (1) there was ballistic and physical evidence linking defendant to the murder weapon, and evidence of defendant's motive and evidence that defendant left work early on the day of the incident with sufficient time to drive from his workplace to the victim's residence to arrive by the time of the shooting; (2) the State presented evidence that defendant had believed the victim's younger child was his but later learned by DNA testing that the child was not his, and the victim was shot in the uterus; and (3) although much of the evidence was circumstantial, viewed in the light most favorable to the State and giving the State the benefit of reasonable inferences led to the conclusion that there was sufficient evidence to survive a motion to dismiss.

Appeal by defendant from judgment entered on or about 22 October 2007 by Judge James E. Hardin, Jr. in Johnston County Superior Court. Heard in the Court of Appeals 14 January 2009.

STATE v. WILKERSON

[196 N.C. App. 706 2009)]

*Attorney General Roy A. Cooper, III, by Special Deputy Attorney General Thomas J. Ziko, for the State.*

*Amos Granger Tyndall, P.A., by Amos Granger Tyndall, for defendant-appellant.*

STROUD, Judge.

Defendant appeals from judgment entered pursuant to a jury verdict finding him guilty of first degree murder. The dispositive question before this Court is whether evidence that the murder weapon was owned by defendant and was found in his possession three days after the murder, along with evidence pointing to defendant's motive and opportunity, is sufficient to sustain a conviction for first degree murder as to the identity of the perpetrator.[1] Because we conclude that it is, we find no error.

## I. Background

On 25 March 2006, Ms. Torrie Carpenter ("Ms. Carpenter" or "the victim") lived with her two children, Sam and Anna,[2] at the Redwood Apartments in Selma, Johnston County. Defendant is Ms. Carpenter's ex-husband. He believed that he was the father of one-year old Sam, until DNA testing determined otherwise.

At the time, defendant worked as a security guard at Saint Augustine's College in Raleigh, about 45 minutes drive from the victim's residence. Defendant normally left work at 5:00 a.m., but on 25 March 2006 he signed out and turned in his keys at 4:00 a.m.

At approximately 5:30 a.m. on 25 March 2006, Ms. Carpenter's neighbors were awakened by loud banging and gunshots. One of the neighbors called 911 to report the shooting.

Officer Miguel Duran answered the 911 call "within minutes." There was no sign of forced entry to the victim's residence. Officer Duran found the body of Ms. Carpenter lying in a pool of blood in the doorway of her apartment. Ms. Carpenter had been shot at least seven times at close range: left forehead, right cheek, right kidney, spine,

---

1. We note that the Attorney General's brief in this case stated the question presented as whether "the evidence was insufficient to establish every element of the charge of *voluntary manslaughter*[.]" (Emphasis added.) The record very clearly shows that defendant was charged with and convicted of only first degree murder.

2. We have used pseudonyms to protect the identity of the children who are regrettably involved in this case.

STATE v. WILKERSON

[196 N.C. App. 706 2009)]

uterus, bladder, and left leg. Officer Duran secured the crime scene as other law enforcement and emergency personnel arrived. SBI Agent Blane Hicks collected nine 9mm shell casings from the scene and four projectiles, including two projectiles from underneath the victim's corpse. An additional projectile was removed from the victim's spine by the medical examiner.

On 28 March 2006, defendant was interviewed by Investigator Vaughn of the Selma Police Department. At the interview, defendant consented to a police search of his car. During the search of the car Investigator Vaughn discovered defendant's 9mm Ruger handgun and receipts for the purchase of the handgun and a box of 9mm ammunition. Defendant voluntarily submitted the Ruger to Investigator Vaughn for testing by the SBI.

Defendant's Ruger, the shell casings and projectiles recovered from the scene of the murder, and the projectile removed from the victim's spine by the medical examiner were tested by Neal Morin, a firearm toolmark examiner with the SBI. Morin determined that "all the bullets and cartridge cases that were submitted to me were, in fact, fired from the Ruger pistol that was also submitted."

Defendant was arrested on 29 March 2006. The Johnston County Grand Jury indicted defendant for first degree murder on 8 May 2006. Defendant was tried before a jury at the 15 October 2007 Criminal Session of Johnston County Superior Court. On 22 October 2007, defendant was found guilty of first degree murder on the basis of malice, premeditation and deliberation and under the first degree felony murder rule. Upon the jury verdict, defendant was sentenced to life imprisonment without parole. Defendant appeals.

## II. Standard of Review

The standard of review for a trial court's denial of a motion to dismiss for insufficient evidence is well-settled:

Evidence is sufficient to sustain a conviction when, viewed in the light most favorable to the State and giving the State every reasonable inference therefrom, there is substantial evidence to support a jury finding of each essential element of the offense charged, and of defendant's being the perpetrator of such offense.

Evidence is substantial if it is relevant and adequate to convince a reasonable mind to accept a conclusion. In considering a motion to dismiss, the trial court does not weigh the evidence,

consider evidence unfavorable to the State, or determine any witness' credibility. Evidence is not substantial if it is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, and the motion to dismiss should be allowed even though the suspicion so aroused by the evidence is strong. This Court reviews the denial of a motion to dismiss for insufficient evidence *de novo*.

*State v. Robledo*, 193 N.C. App. 521, 525, 668 S.E.2d 91, 94 (2008) (citations, quotation marks, brackets and ellipses omitted). "If substantial evidence, whether direct, circumstantial, or both, supports a finding that the offense charged has been committed and that the defendant committed it, the motion to dismiss should be denied and the case goes to the jury." *State v. Thaggard*, 168 N.C. App. 263, 281, 608 S.E.2d 774, 786 (2005) (citation omitted).

### III. Analysis

Defendant's sole argument on appeal is that the State's evidence as to his identity as the perpetrator of his ex-wife's murder was not substantial, raising only a strong suspicion. We disagree.

Defendant relies on *State v. Jones*, 280 N.C. 60, 184 S.E.2d 862 (1971), a case in which the North Carolina Supreme Court held that the evidence presented by the State was insufficient to sustain the defendant's conviction for second degree murder. *Id.* at 67, 184 S.E.2d at 866. In *Jones*, the defendant was tried and convicted for the murder of his wife, Peggy. *Id.* at 60, 184 S.E.2d at 862. The State presented evidence that Peggy was shot six times with .22-caliber bullets. *Id.* at 60, 184 S.E.2d at 862. Peggy's body was found in a pool of blood in the storage room of the general store she and the defendant owned and operated together. *Id.* at 64, 184 S.E.2d at 864. The defendant had purchased six .22-caliber revolvers eighteen days before the murder, and six revolvers were found in a pasteboard box in the storage room when Peggy's body was discovered. *Id.* at 64, 184 S.E.2d at 865. When the defendant was arrested less than five hours after the murder, he was highly intoxicated from alcohol and drugs, his pocket contained "five empty .22-caliber cartridges and three live rounds" and his jacket had several spots of type O blood, the blood type of both the defendant and Peggy. *Id.* at 64-65, 184 S.E.2d at 865.

The trial court denied the defendant's motion to dismiss for insufficient evidence that the deceased died as a result of the defend-

ant's actions. *Id.* at 66, 184 S.E.2d at 866. The Supreme Court reversed, holding:

> The State's evidence in this case establishes a brutal murder. It shows that defendant had the opportunity to commit it and begets suspicion in imaginative minds. All the evidence engenders the question, if defendant didn't kill his wife, who did? To raise such a question, however, will not suffice to sustain a conviction.

*Id.* (citation, quotation marks and brackets omitted).

The State responds that the case *sub judice* is apposite to *State v. Stone*, 323 N.C. 447, 373 S.E.2d 430 (1988). In *Stone*, the State presented evidence that: (1) the defendant was the last person to see the victim alive, *id.* at 454, 373 S.E.2d at 434; (2) the defendant made false statements during a police interview, *id.* at 454, 373 S.E.2d at 434; (3) after the police interview the defendant delivered a .22-caliber pistol with "eight lands and grooves of rifling with a right hand twist" and a box of ammunition to her father; tests showed that the victim was shot with a pistol with "eight lands and grooves of rifling with a right hand twist" and that bullets from the box of ammunition were very similar in composition to the bullets removed from the victim, *id.* at 449-50, 373 S.E.2d at 432; and (4) tire tracks matching the tires of the car the defendant was driving on the night of the murder were found near the victim's body, *id.* at 453, 373 S.E.2d at 434. The Supreme Court concluded that the State had presented sufficient evidence as to the identity of the defendant as perpetrator. *Id.* at 453-54, 373 S.E.2d at 434-35.

The case *sub judice* has less evidence that defendant was the perpetrator than *Stone*, but more than *Jones*, so neither of those cases is strictly apposite. Our own research reveals a case with very similar facts, *State v. Cannada*, 114 N.C. App. 552, 442 S.E.2d 344 (1994), *rev'd per curiam*, 340 N.C. 101, 455 S.E.2d 158 (1995), and we conclude that *Cannada* controls this case.

In *Cannada*, the State presented evidence that:

> About 5:30 p.m. on the evening of the killing, the victim and the defendant, who had been drinking, were overheard arguing loudly with each other inside the victim's house. The victim was last seen alive around 6:30 p.m. The defendant was seen around 7:30 p.m., dressed in a t-shirt and shorts and barefooted, walking

from the house to the truck which was parked in the street in front of the victim's house. At 7:50 p.m., the victim's BMW, which had been parked in the victim's driveway, was seen barreling from the house and down the street. No one saw the defendant walking in the neighborhood on the evening of the killing nor had defendant ever been seen walking in the neighborhood.

When the police arrived at the victim's residence at 8:20 p.m., they found the defendant sitting barefooted on the front porch of the house, and the BMW in the driveway. The victim was found lying on the kitchen floor and no gun was found in the house. The defendant told the police that he did not know what had happened as he had been out walking for about an hour and on his return found his gun missing and the victim dead on the floor. He also told the police that it had been a long time since he and the victim had argued. Upon questioning the defendant in one of the patrol cars, an unfired shotgun shell, which was later determined had been chambered in the gun which had killed the victim, fell from the defendant's pocket. The gun was found several days later near a road not far from the victim's residence, at a place where the defendant was seen, the day after the killing, driving by very slowly.

*Cannada*, 114 N.C. App. at 561, 442 S.E.2d at 349 (Greene, J., dissenting).

This Court, citing *State v. Jones*, the case relied on *sub judice* by defendant, ruled in favor of defendant:

We note that there were no eye witnesses to the shooting; that there were no eye witnesses who saw defendant with the murder weapon; that *there was no physical evidence found at the scene of the crime or on defendant connecting him with the murder*; that defendant made no out-of-court incriminating statements; and that the entire case was circumstantial and speculative, resting solely on evidence suggesting defendant may have had a motive to kill Ms. Gilmore because she wanted to break up with him, and because defendant and Ms. Gilmore had an argument shortly before her death.

*Cannada*, 114 N.C. App. at 559, 442 S.E.2d at 348 (emphasis added). On appeal, however, the North Carolina Supreme Court reversed *per curiam*, citing Judge Greene's dissent. 340 N.C. at 101, 455 S.E.2d at 158.

STATE v. WILKERSON

[196 N.C. App. 706 2009)]

Though not specifically mentioned in Judge Greene's dissent nor in the opinion of the Supreme Court, our review of the cases leads us to conclude that the differences between *Jones* and *Cannada* are: (1) primarily the State's evidence of a connection between the defendant and the murder weapon, 114 N.C. App. at 556, 442 S.E.2d at 346, which this Court appears to have overlooked when it opined "that there was no physical evidence found at the scene of the crime or on defendant connecting him with the murder[,]" 114 N.C. App. at 557–58, 442 S.E.2d at 347; and (2) secondarily the State's evidence of motive and opportunity. Because the case *sub judice* contains ballistic and physical evidence linking defendant to the murder weapon, evidence of defendant's motive and evidence that defendant left work early on the day of the incident with sufficient time to drive from his workplace to the victim's residence to arrive by the time of the shooting, we conclude that *Cannada* controls.

In *Jones*, empty cartridges of the same caliber as the bullets that killed the victim were found on the defendant's person, but the State did not present evidence to connect the empty cartridges found on the defendant's person with the bullets that killed the victim. 280 N.C. at 65, 184 S.E.2d at 865. In *Cannada*, to the contrary, scientific evidence linked a shotgun shell recovered from the defendant's person to the murder weapon and witness testimony placed defendant, the day after the murder, near where the murder weapon was hidden. 114 N.C. App. at 556, 442 S.E.2d at 346. Furthermore, in *Cannada* the State presented evidence that the defendant argued with the victim around two hours before the murder; 114 N.C. App. at 558, 442 S.E.2d at 347-48; in this case the State presented evidence that defendant had believed the victim's child Sam was his but later learned by DNA testing that the child was not his and that the victim was shot in the uterus. Finally, the State presented evidence that defendant left work early with sufficient time to reach the home of the victim.

Although much of the evidence is circumstantial, when we consider all of the evidence, viewed in the light most favorable to the State, and giving the State the benefit of reasonable inferences, we conclude that the State presented sufficient evidence to survive defendant's motion to dismiss.

NO ERROR.

Judges CALABRIA and ELMORE concur.