STATE OF NORTH CAROLINA v. RONELL MICHAEL BETTIS, Defendant

No. COA09-1345

(Filed 7 September 2010)

**1. Evidence— exclusion—another suspect on bicycle—failure to make offer of proof**

The trial court did not abuse its discretion in a possession of a firearm by a felon and robbery with a firearm case by excluding evidence of another suspect on a bicycle. Defendant failed to make an offer of proof, and the significance of the information regarding a person on a bicycle was not obvious from the record.

**STATE v. BETTIS**

[206 N.C. App. 721 (2010)]

**2. Criminal Law— instruction—flight—circumstantial evidence of identity**

The trial court did not err in a possession of a firearm by a felon and robbery with a firearm case by overruling defendant's instruction on flight. Defendant failed to point to any case law providing that circumstantial evidence of defendant's identity as the individual fleeing from a car wreck could not be used to establish flight.

**3. Firearms and Other Weapons— possession of firearm by felon—robbery with firearm—motion to dismiss—sufficiency of evidence—dangerous weapon**

The trial court did not err by denying defendant's motion to dismiss the charges of possession of a firearm by a felon and robbery with a firearm even though defendant contended there was insufficient evidence that a dangerous weapon was in fact used or that the robber was in fact defendant. Where there is evidence that a defendant has committed a robbery with what appears to the victim to be a firearm or other dangerous weapon and nothing to the contrary appears in evidence, the presumption that the victim's life was endangered or threatened is mandatory. The State need not have affirmatively demonstrated that the gun recovered from defendant's car was operable, and there was sufficient circumstantial evidence that defendant committed the robbery.

**4. Robbery— failure to instruct on lesser-included charge—common law robbery**

The trial court did not err or commit plain error by failing to instruct the jury on common law robbery. The State did not need to establish that the gun was operable since no contrary evidence was presented. Further, there was substantial evidence of the elements of robbery with a dangerous weapon, and thus, an instruction on the lesser included offense of common law robbery was not required.

Appeal by defendant from judgments entered on or about 23 April 2009 by Judge Howard E. Manning, Jr. in Superior Court, Wake County. Heard in the Court of Appeals 25 March 2010.

*Attorney General Roy A. Cooper, III, by Special Deputy Attorney General Daniel D. Addison, for the State.*

*Daniel F. Read, for defendant-appellant.*

STROUD, Judge.

A jury found defendant guilty of possession of a firearm by a felon and robbery with a firearm. On appeal, defendant argues the trial court erred in excluding evidence of another suspect, instructing the jury on flight, denying defendant's motions to dismiss, and failing to instruct the jury on common law robbery. For the following reasons, we find no error.

## I. Background

The State's evidence tended to show that at approximately 3:00 a.m. on 30 March 2008 Mr. Odunaya Eisayo was working at a Circle K store. Mr. Eisayo was assisting a customer when he heard someone ("the suspect") say, "Open the register and give me the money, quick." The suspect was wearing a black mask and holding a gun. The suspect hit Mr. Eisayo with the gun. Mr. Eisayo gave the suspect all of the cash from the cash register. Mr. Eisayo described the suspect as approximately five feet, five inches tall, wearing a mask and a dark jacket.

Mr. Robert Finch was at the Circle K to get gas when he "saw a gentleman in a black mask had the clerk by the neck with one hand. In the other hand, he was hitting the clerk in the head with a gun." Mr. Finch saw the suspect run out of the building and jump into a light-colored sedan.

Officer Adams of the Raleigh Police Department was responding to a call about the robbery at the Circle K when he saw a vehicle that matched the description of the suspect's vehicle. Officer Adams made a U-turn to follow the suspect vehicle and the vehicle began speeding approximately 55 to 65 miles per hour above the speed limit. The suspect vehicle then ran a stop sign, drove through a yard, and hit a fence. The suspect jumped out of the vehicle. Officer Adams saw a "black male, approximately five foot, seven inches tall, medium complexion, wearing black pants, a black wave cap/hair cap, and a dark-colored jacket."

Agent Timothy Anguish of the City County Bureau of Identification was called to the scene of the car wreck. The vehicle the suspect ran

from was a Plymouth Acclaim with license plate XRE-8148. Inside the vehicle, Agent Anguish found, *inter alia*, a black mask and a gun. Officer Miller of the Raleigh Police Department learned that the wrecked vehicle belonged to defendant.

Also on 30 March 2008, Officer Inman of the Raleigh Police Department responded to a 911 call from defendant reporting his car stolen. Defendant told Officer Inman he had left his car at his apartment with the key in the glove box. Officer Inman informed defendant that his car had been found and asked him to come to the police station.

Detective Bryan Hall of the Raleigh Police Department was informed that defendant had reported to 911 that his car was stolen. Detective Hall began discussing the robbery at the Circle K with defendant, to which defendant responded, "Okay. My car was not stolen, but I don't know anything about any robbery." Detective Hall read defendant his Miranda rights, and defendant agreed to waive them. Defendant denied committing the robbery, but also stated, "Just take me over to county. If you're going to charge me, just send me over there. I'll get ten years for the robbery and another seven for the weapon. That's it. Just send me over there. I'm better off there."

On or about 19 May 2008, defendant was indicted for possession of a firearm by a convicted felon, providing a false report to a law enforcement officer, and robbery with a dangerous weapon. On or about 18 August 2008, a superceding indictment was filed charging defendant with possession of a firearm by a convicted felon. After a jury trial, defendant was convicted of possession of a firearm by a felon and robbery with a firearm. Defendant had a prior record level of IV and was sentenced to 20 to 24 months imprisonment on the possession of a firearm by a felon conviction and 112 to 144 months on the robbery with a dangerous weapon conviction. Defendant appeals.

II. Suspect on a Bicycle

[1] Defendant first contends that "the trial court erred in excluding evidence that there was a second suspect on a bicycle and same was highly relevant in light of the fact that the actual robber was not tracked from the scene." (Original in all caps). "[T]he proper standard of review for reviewing a trial court's decision to admit or exclude evidence is abuse of discretion." *State v. Early*, 194 N.C. App. 594, 599, 670 S.E.2d 594, 599 (2009) (citation omitted). "Our Supreme Court has often stated that the test to be used when evaluating an abuse of discretion issue is whether a decision is manifestly unsup-

ported by reason, or so arbitrary that it could not have been the result of a reasoned decision." *Leggett v. AAA Cooper Transp., Inc.*, —— N.C. App. ——, ——, 678 S.E.2d 757, 761 (2009) (citation, quotation marks, ellipses, and brackets omitted).

During Officer Hourigan's testimony, on cross-examination, the following dialogue took place:

Q. . . . . But did you help search for the suspect on a bicycle that was reported by a witness?

A. No. I did not.

Q. Okay. Were you aware that there was a concerned citizen——

MS. JANSSEN [State's attorney]: Objection.

THE COURT: Sustained.

Q. Did anyone talk to you about a person on a bicycle, any police officer?

A. I don't recall anyone talking to me about someone on a bicycle.

Also in the trial, during Detective Hall's cross-examination the following was stated:

Q. Did you receive any information about another suspect on a bicycle in a fact sheet?

A. I reviewed that information after completing everything in this particular case, what's called a case jacket. I do remember reading information about a person on a bicycle, yes.

Q. And that person matched the description of the robber——

MS. JANSSEN: Objection.

THE COURT: Sustained.

Q. Well, did you, yourself, talk with anybody else besides Mr. Bettis as a suspect?

A. No, sir.

Lastly, during Detective Goodall's testimony defendant's attorney asked, "And were you aware that they were also searching for a person on a bicycle that matched the description of the robber?" Detective Goodall responded, "I heard nothing about a bicycle." The State did not object.

Our Supreme Court has determined a party must make an offer of proof, unless the record reveals the significance of the excluded evidence, to have appellate review of the exclusion of evidence. *See State v. Jacobs*, 363 N.C. 815, 818, 689 S.E.2d 859, 861 (2010).

> In order for a party to preserve for appellate review the exclusion of evidence, the significance of the excluded evidence must be made to appear in the record and a specific offer of proof is required unless the significance of the evidence is obvious from the record. We also held that the essential content or substance of the witness' testimony must be shown before we can ascertain whether prejudicial error occurred.

*Jacobs* at 818, 689 S.E.2d at 861 (citation, quotation marks, and brackets omitted). In *Jacobs*, the trial court excluded

> certain evidence of the victim's character during Hampton's[, the victim's friend's,] testimony. Hampton testified that the victim originally placed in Hampton's car the nine-millimeter handgun that Hampton used to return fire at defendant. However, when defense counsel sought to elicit from Hampton additional testimony about how often the victim carried such weapons, the nature of the victim's reputation in the community, and the felony or felonies of which the victim had previously been convicted, the trial court sustained the State's objections.
>
> . . . .
>
> Hampton was permitted to testify that he knew the victim was a convicted felon. When asked how he knew that, Hampton responded, "Hearsay," adding that the victim had not told him about any prior convictions. Defense counsel then asked which of the victim's convictions were known to Hampton, and although the trial court sustained the State's objection, Hampton nonetheless responded, "I don't know exactly."

*Id.* at 818-19, 689 S.E.2d at 861-62. The Supreme Court determined that

> [n]o offer of proof was made regarding any details Hampton knew about the victim's criminal history, nor is the significance of any purported knowledge or lack of knowledge of these convictions on the part of Hampton, defendant's companion at the time of the shooting, obvious from the record. Accordingly, the exclusion of this evidence has not been preserved for appellate review.

*Id.* at 819, 689 S.E.2d at 862.

Here, when the State objected and the trial court sustained the objections, defendant failed to make any offer of proof, voir dire the witnesses, offer any further evidence or even raise the bicycle issues again. It appears from Detective Hall's testimony that the substantive information which would be necessary to make the offer was proof was part of the information Detective Hall reviewed "after completing everything in this particular case, what's called a case jacket." However, defendant did not make the offer of proof, and the significance of the information regarding a "person on a bicycle" is not obvious from the record. Defendant does not direct us to a single place in the three-hundred-fifty-eight page transcript, other than the portions noted above, where anyone a side from defendant's attorney mentions a suspect on a bicycle. "Accordingly, the exclusion of this evidence has not been preserved for appellate review." *Id.* This argument is overruled.

### III. Jury Instruction on Flight

[2] Defendant next argues that "the trial court erred in overruling defendant's objection to the instruction on flight, as there was no evidence that the person who fled was in fact defendant." (Original in all caps.) Defendant contends that "the evidence was only circumstantial that Mr. Bettis was at the scene of the robbery or that he was in the car" and that "the jury should not have been allowed to consider evidence of flight as evidence of guilt" given that the only evidence was circumstantial. Thus, defendant is not arguing that there was not evidence of the flight of the suspect fleeing the scene of the car wreck, but rather that there was only circumstancial evidence that defendant was the suspect who was fleeing the scene.

> On appeal, this Court considers a jury charge contextually and in its entirety. The charge will be held to be sufficient if it presents the law of the case in such manner as to leave no reasonable cause to believe the jury was misled or misinformed. The party asserting error bears the burden of showing that the jury was misled or that the verdict was affected by an omitted instruction. Under such a standard of review, it is not enough for the appealing party to show that error occurred in the jury instructions; rather, it must be demonstrated that such error was likely, in light of the entire charge, to mislead the jury.

*Bass v. Johnson*, 149 N.C. App. 152, 160, 560 S.E.2d 841, 847 (2002) (citations, quotation marks, and ellipses omitted). "[J]ury instructions relating to the issue of flight are proper as long as there is some

evidence in the record reasonably supporting the theory that the defendant fled after the commission of the crime charged." *State v. Allen*, 346 N.C. 731, 741, 488 S.E.2d 188, 193 (1997) (citations and quotation marks omitted).

Defendant fails to direct us to any case law providing that circumstantial evidence of the defendant's identity cannot be used to establish flight. "The law makes no distinction between the weight to be given to either direct or circumstantial evidence." *State v. Nunez*, —— N.C. App. ——, ——, 693 S.E.2d 223, 226 (2010) (citation omitted). Here, the evidence included a description of a masked man robbing a store and escaping in a light-colored sedan; an officer seeing a vehicle that matched such description and when he went to follow the vehicle, defendant's vehicle, it sped up; a high speed chase with defendant's vehicle in close proximity and time to the robbery; defendant's abandoned car, matching the eyewitness description of the suspect's car, which contained a mask and a gun; and defendant's initial report that his car was stolen, followed by his admission that it was not stolen. Accordingly, we conclude there was sufficient evidence, be it circumstantial or not, that defendant was the individual fleeing from the car wreck in order for the trial court to properly give a jury instruction on flight. The jury instructions "are proper . . . as there is some evidence in the record reasonably supporting the theory that the defendant fled after the commission of the crime charged." *Allen* at 741, 488 S.E.2d at 193. Defendant's argument is overruled.

IV. Motions to Dismiss

**[3]** Defendant next argues that "the trial court erred by denying defendant's motions to dismiss, as the believable evidence was insufficient to submit the case to the jury, in particular the lack of evidence that a dangerous weapon was in fact used or that the robber was in fact this defendant." (Original in all caps.)

The standard of review for a trial court's denial of a motion to dismiss for insufficient evidence is well-settled:

Evidence is sufficient to sustain a conviction when, viewed in the light most favorable to the State and giving the State every reasonable inference therefrom, there is substantial evidence to support a jury finding of each essential element of the offense charged, and of defendant's being the perpetrator of such offense.

**STATE v. BETTIS**

[206 N.C. App. 721 (2010)]

Evidence is substantial if it is relevant and adequate to convince a reasonable mind to accept a conclusion. In considering a motion to dismiss, the trial court does not weigh the evidence, consider evidence unfavorable to the State, or determine any witness' credibility. Evidence is not substantial if it is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, and the motion to dismiss should be allowed even though the suspicion so aroused by the evidence is strong. This Court reviews the denial of a motion to dismiss for insufficient evidence de novo.

If substantial evidence, whether direct, circumstantial, or both, supports a finding that the offense charged has been committed and that the defendant committed it, the motion to dismiss should be denied and the case goes to the jury.

*State v. Wilkerson*, —— N.C. App. ——, ——, 675 S.E.2d 678, 680 (2009) (citation and quotation marks omitted).

"The elements of robbery with a dangerous weapon are: (1) an unlawful taking or an attempt to take personal property from the person or in the presence of another; (2) by use or threatened use of a firearm or other dangerous weapon; (3) whereby the life of a person is endangered or threatened." *State v. Cole*, —— N.C. App. ——, ——, 681 S.E.2d 423, 427 (citation and quotation marks omitted), *disc. review denied*, 363 N.C. 658, 686 S.E.2d 678, *disc. review denied*, 363 N.C. 658, 686 S.E.2d 679 (2009).

A. Operability of Weapon

As to his motions to dismiss, defendant first argues that the State failed to prove the "firearm or other dangerous weapon" was operable. *Id.* Defendant argues "it is . . . well settled that in a case where robbery with a dangerous weapon is charged and the weapon is found and submitted into evidence, it is an essential element in proving that the victim's life was actually endangered that the weapon be shown to be operable[;]" defendant cites to *State v. Joyner*, 312 N.C. 779, 324 S.E.2d 841 (1985). However, *State v. Joyner* provides that

[w]hen a person commits a robbery by the use or threatened use of an implement which appears to be a firearm or other dangerous weapon, the law presumes, in the absence of any evidence to the contrary, that the instrument is what his conduct repre-

sents it to be–an implement endangering or threatening the life of the person being robbed. *Thus, where there is evidence that a defendant has committed a robbery with what appears to the victim to be a firearm or other dangerous weapon and nothing to the contrary appears in evidence, the presumption that the victim's life was endangered or threatened is mandatory.*

312 N.C. 779, 782, 324 S.E.2d 841, 844 (1985) (emphasis added) (citation omitted).

Here, there was no "evidence to the contrary" that indicated the gun recovered from defendant's car was not operable. *Id.* Therefore, "where there is evidence that a defendant has committed a robbery with what appears to the victim to be a firearm or other dangerous weapon and nothing to the contrary appears in evidence, the presumption that the victim's life was endangered or threatened is mandatory." *Id.* Thus, in this situation, the State need not affirmatively demonstrate that the gun recovered from defendant's car was operable.

B. Defendant as the Perpetrator

Defendant also argues that all evidence that he committed the robbery was circumstantial. Again, "[t]he law makes no distinction between the weight to be given to either direct or circumstantial evidence." *Nunez* at ——, 693 S.E.2d at 226. Here, the State's evidence showed that an individual in a mask with a gun hit Mr. Eisayo with a gun and forced Mr. Eisayo to give him money; the individual then ran to a light-colored sedan; a light-colored sedan, registered to defendant, was seen in the area of the crime close in time to when the crime was reported; when an officer followed defendant's vehicle it sped up and eventually crashed; an individual was seen fleeing from defendant's vehicle; and a mask and gun were left in defendant's vehicle. We find this to be substantial evidence that defendant committed the crime of robbery with a dangerous weapon. *See Cole* at ——, 681 S.E.2d at 427; *Wilkerson* at ——, 675 S.E.2d at 680. These arguments are overruled.

V. Jury Instruction on Common Law Robbery

[4] Lastly, defendant argues that "the trial court committed plain error by failing to instruct on common law robbery as there was no evidence that the weapon was indeed dangerous and therefore the jury should have been allowed to consider a verdict of guilty of common law robbery." (Original in all caps.) Here, defendant argues that because the State did not establish that the gun was operable, the

**STATE v. BETTIS**

[206 N.C. App. 721 (2010)]

trial court should have instructed the jury on common law robbery and not simply robbery with a dangerous weapon.

"Under plain error review, the appellate court must be convinced that absent the error the jury probably would have reached a different verdict." *State v. Doe*, 190 N.C. App. 723, 732, 661 S.E.2d 272, 278 (2008) (citation and quotation marks omitted). However, we need not even consider plain error as we have already concluded that the State did not need to establish that the gun was operable because no contrary evidence was presented. *See Joyner* at 782, 324 S.E.2d at 844. As there was substantial evidence of the elements for robbery with a dangerous weapon, the trial court did not need to instruct the jury on the lesser-included offense of common law robbery. *See State v. Johnson*, 337 N.C. 212, 221, 446 S.E.2d 92, 97-98 (1994) ("Where the uncontradicted evidence is positive and unequivocal as to each and every element of armed robbery, and there is no evidence supporting defendant's guilt of a lesser offense, the trial court does not err in failing to instruct the jury on the lesser included offense of common law robbery. In the present case uncontradicted evidence showed that both Mr. and Mrs. Ross were threatened with a deadly weapon; hence, we conclude the trial court did not err in failing to instruct on common-law robbery." (citation and brackets omitted)). This argument is overruled.

## VI. Conclusion

For the foregoing reasons, we find no error.

NO ERROR.

Judges ELMORE and JACKSON concur.