An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-109

NORTH CAROLINA COURT OF APPEALS

Filed:  19 August 2014

STATE OF NORTH CAROLINA

    v.                                          Mecklenburg County
                                                    11 CRS 219314

MEGAEL JERMAINE MATTHEWS


Appeal by defendant from judgments entered 22 April 2013 by Judge C. Thomas Edwards in Mecklenburg County Superior Court. Heard in the Court of Appeals 4 June 2014.

> *Attorney General Roy Cooper, by Assistant Attorney General Alexandra M. Hightower, for the State.*

> *Tin Fulton Walker & Owen PLLC, by Matthew G. Pruden, for Defendant-Appellant.*


McCULLOUGH, Judge.


Megael Jermaine Matthews ("Defendant") appeals from judgments entered upon his convictions for attempted first degree murder, assault with a deadly weapon with intent to kill inflicting serious bodily injury, and discharging a firearm into occupied property inflicting serious bodily injury.  For the following reasons we find no error.

I. Background

On the evening of 24 April 2011, Charlotte-Mecklenburg police responded to a report of a single vehicle accident at the intersection of West Sugar Creek Road and Hubbard Road in Charlotte.  Officer Derrick Bowlin responded to the call, and when he arrived at the scene he found a single vehicle parked in the grass off of the road with several bullet holes in the side.  When Officer Bowlin approached the car, the passenger in the driver's seat told him that he had been shot.  Later, Officer Bowlin joined other police officers at an address in the 4500 block of Christenbury Hills Lane, about a mile and a half from the scene of the car accident, after reports had come in earlier that day that shots had been fired in that vicinity.

Earlier that same afternoon, upon hearing gun shots, Tiffany Amaya looked through her living room window on Christenbury Hills Lane and observed two men walking toward the back of a house.  She later described these men as black and approximately 5'9" in height.  She described one of the men as in his early 20's with short dreads and wearing a bright blue shirt.

Based on information from neighbors, Detective Ritter and other officers were posted outside of 4542 Christenbury Hills Lane at approximately 10:00 p.m. when two men were seen exiting from that residence, one of whom was later identified as

Defendant. As soon as Defendant exited the building, Detective Ritter placed him in handcuffs and frisked him for weapons. Immediately after, while still in handcuffs, Defendant was placed in the back seat of a patrol car on the scene. During the approximately forty-five minutes that Defendant was detained in the back of the patrol car an officer was present outside of the car. Defendant has testified that at this time he did not feel free to leave, but that he was told several times that he was not under arrest.

After forty-five minutes in the police cruiser, Defendant was uncuffed and asked to exit so that a show-up identification could be performed. It was at this time that Ms. Amaya was asked to perform the show-up identification of a suspect. Ms. Amaya observed that the suspect, Defendant, was approximately 5'9", had dreads, and was wearing a navy blue shirt, which she identified as a different color from the shirt worn by the person she had observed walking behind the house. She was unsure whether the suspect was the person that she had observed previously in the afternoon.

At the scene, Detective Manassah questioned Defendant about what he had done that day, and then requested that he accompany the officers to the Law Enforcement Center ("LEC") for questioning. With Detective Manassah's permission, Defendant

called his father, who drove to the scene and accompanied Defendant to the police station. During the ride, Defendant was unrestrained, sat in the front seat, and used his cell phone.

At the LEC, Defendant was placed in an interview room and the questioning began at 12:09 a.m. During the questioning, Defendant gave several different accounts of his story. Eventually, Defendant confessed to shooting the victim after discovering that the $100 bill the victim had paid Defendant in a marijuana transaction was counterfeit. At this time, 4:31 a.m., Defendant was placed under arrest and read his *Miranda* rights.

During the interview, Defendant was left alone several times, and was told that there was a bathroom down the hall if he needed to use it. Defendant was also able to privately speak with his father in the interview room shortly after 3:00 a.m.

Defendant was later indicted by a Mecklenburg County Grand Jury on one count of attempted first degree murder, one count of assault with a deadly weapon with intent to kill inflicting serious injury, one count of discharging a firearm into occupied property inflicting serious bodily injury, and six counts of discharging a firearm into a vehicle in operation. Prior to trial, Defendant moved to suppress the statements he made to

police. A hearing on the motion to suppress was held on 11-12 April 2013. This motion was denied on 15 April 2013.

On 15 April 2013, Defendant's case was called for trial in Mecklenburg County Superior Court, the Honorable C. Thomas Edwards, Judge presiding. After the State presented its evidence, Defendant moved for a dismissal, which was denied. Defendant presented no evidence, and the jury returned verdicts finding Defendant guilty of all charges on 22 April 2013. That same day, the trial judge sentenced Defendant to a term of 125 to 161 months in prison for the charge of attempted first degree murder, under which the judge consolidated the charge of assault with a deadly weapon with intent to kill inflicting serious bodily injury. The Judge also sentenced Defendant to a consecutive term of 72 to 96 months for the charge of discharging a firearm into occupied property inflicting serious bodily injury, and consolidated the remaining charges under this sentence. That day, 22 April 2013, trial counsel for Defendant allegedly entered an oral notice of appeal in open court. The notice, however, was not recorded by the court reporter and does not appear in the transcript of the trial.

## II. Discussion

Defendant raises the following issues on appeal: (1) whether the trial court erred in denying Defendant's motion to

suppress statements made to the police during a period of questioning that occurred before Defendant was read his *Miranda* rights; (2) whether Defendant received ineffective assistance of counsel where his attorney did not raise a Fourth Amendment argument in his motion to suppress Defendant's statements to police; and (3) whether the trial court erred in denying Defendant's motion to dismiss the charge of discharging a firearm into an occupied vehicle in operation where there was no direct evidence that the vehicle was in operation at the time the shots were fired.

### A. Notice of Appeal

Defendant appeals to this Court as of right under N.C. Gen. Stat. § 7A-27(b) and N.C. Gen. Stat. § 15A-1444(a). Now on appeal, Defendant contends trial counsel orally entered notice of appeal per Rule 4 of the North Carolina Rules of Appellate Procedure at trial. However, Defendant's oral notice of appeal does not appear in the transcript. In an attempt to remedy this situation, Defendant's trial counsel has filed an affidavit in the record that certifies he entered such oral notice of appeal at trial on 22 April 2013.

Furthermore, Defendant points to *State v. Williams*, in which this Court held that it had jurisdiction to address the merits of a defendant's appeal where

> the record reflect[ed] that the State, the trial court, and Defendant's counsel all proceeded as if proper notice of appeal had been properly noted. Upon Defendant's request, the trial court appointed the Appellate Defender's Office to represent her, and stayed the execution of judgment pending resolution of the matter in the Court of Appeals. The trial court stated in its Appellate Entries form that "[D]efendant has given Notice of Appeal to the N.C. Court of Appeals," and "ordered that [Defendant] is allowed to appeal as an indigent."

*State v. Williams*, 215 N.C. App. 1, 4, 714 S.E.2d 835, 837 (2011) (alterations in original), *affirmed*, 366 N.C. 110, 726 S.E.2d 161 (2012).

In the case before us, all parties have proceeded as if notice of appeal had been properly noted: the trial court appointed the Appellate Defender's Office to represent Defendant, the trial court noted in its appellate entries that "[t]he defendant has given Notice of Appeal to the N.C. Court of Appeals," and "ordered that the defendant is allowed to appeal as indigent."

Under these circumstances, in comporting with our holding in *Williams*, we hold that Defendant's right to appeal is preserved and this court has the appropriate jurisdiction to resolve this case on the merits.[1]

---

[1]Out of precaution, Defendant has also petitioned this court for writ of certiorari. Having determined Defendant's right to appeal is preserved, we dismiss defendant's petition as moot.

### B. <u>Motion to Suppress Confession</u>

Defendant first argues that the trial court erred in denying his motion to suppress. The North Carolina Supreme Court has previously held that:

> On review of a motion to suppress evidence, an appellate court determines whether the trial court's findings of fact are supported by the evidence and whether the findings of fact support the conclusions of law. The trial court's findings of fact are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting. The conclusions of law, however, are reviewed de novo.

*State v. Haislip*, 362 N.C. 499, 499-500, 666 S.E.2d 757, 758 (2008) (internal quotations and citations omitted). Furthermore, "[w]here a defendant fails to challenge any of the trial court's findings of fact relating to the motion, our review is limited to whether the trial court's findings of fact support its conclusions of law." *State v. Allen*, 200 N.C. App. 709, 712-13, 684 S.E.2d 526, 529 (2009) (citations omitted).

Here, the Defendant has not contested any of the findings of fact on appeal, merely the application of the law to the facts. Therefore, our review of the motion to suppress is on an entirely *de novo* basis.

As the State notes in its brief, the law differentiates between the "free to leave" test under the Fourth Amendment for the purposes of the seizure of a person and the "restraint of

movement" test found under the Fifth Amendment for the purposes of a detainment that rises to the level of a formal, custodial arrest. *State v. Buchanan*, 353 N.C. 332, 340, 543 S.E.2d 823, 828 (2001). In *Miranda v. Arizona*, the U.S. Supreme Court held that "custodial interrogation" involves "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any *significant* way." *Miranda v. Arizona*, 384 U.S. 436, 444, 16 L. Ed. 2d 694, 706 (1966) (emphasis added).

The Supreme Court later elaborated that

> a noncustodial situation is not converted to one in which *Miranda* applies simply because a reviewing court concludes that, even in the absence of any formal arrest or restraint on freedom of movement, the questioning took place in a "coercive environment." Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer *Miranda* warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. *Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him "in custody."

*Oregon v. Mathiason*, 429 U.S. 492, 495, 50 L. Ed. 2d 714, 719 (1977).

In *Mathiason*, the Supreme Court held that even though a suspect was being voluntarily questioned at the police station behind closed doors, and where the police lied to the suspect and warned him about his truthfulness, the questioning was not custodial, and did not require *Miranda* warnings. *Id.* at 493, 50 L. Ed. 2d at 718.

Finally, in *California v. Beheler*, the Supreme Court held that "[a]lthough the circumstances of each case must certainly influence a determination of whether a suspect is 'in custody' for purposes of receiving *Miranda* protection, the ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125, 77 L. Ed. 2d 1275, 1279 (1983) (quoting *Mathiason*, 429 U.S. at 495, 50 L. Ed. 2d at 719).

In the present case, the actions of the police do not appear tantamount to placing Defendant under custodial arrest. Defendant was initially placed in handcuffs for the safety of the officers. At that time he was in "investigatory detention," which was warranted because the police had reasonable suspicion

that a crime had been committed and that he had been involved. In North Carolina,

> [o]nly unreasonable investigatory stops are unconstitutional. An investigatory stop must be justified by a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity.
>
> A court must consider the totality of the circumstances—the whole picture in determining whether a reasonable suspicion to make an investigatory stop exists. The stop must be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training. The only requirement is a minimal level of objective justification, something more than an unparticularized suspicion or hunch.

*State v. Watkins*, 337 N.C. 437, 441-42, 446 S.E.2d 67, 70 (1994) (internal citations and quotations omitted).

Here, the police had specific articulable facts, including the fact that the house where Defendant left from was close to the shooting and there was a witness that saw two men walk into the home shortly after hearing gun shots. The investigatory detention, though forty-five minutes long, was not improper because during this time the police were checking Defendant's record and attempting to set up a show-up identification. Defendant was taken out of handcuffs for this show-up and

remained out of handcuffs until his eventual arrest early the next morning.

After the police uncuffed Defendant, he was told he was not under arrest; he was asked to come to the station for voluntary questioning; he was allowed to call his father and have his father accompany him to the police station; he rode in the front seat of the police vehicle; the door to the questioning room remained open until Defendant closed it himself; he was allowed to use the bathroom unaccompanied while at the station; and he was allowed to use his cell phone during breaks. In light of these circumstances, it does not appear that Defendant was restrained in his freedom of movement to a degree comparable to a lawful, custodial arrest. Although the questioning may have had coercive aspects, and the officers may have appeared tough on Defendant in questioning, this alone is not sufficient to require *Miranda* warnings.

Therefore, Defendant was not under a custodial interrogation when he made his confession to the police, and *Miranda* warnings were not required. Further, the voluntariness of the questioning, and thereby the confession, were not tainted by the initial investigatory detention of Defendant because the police had reasonable suspicion to detain him at that time.

C. Ineffective Assistance of Counsel

Defendant next claims that he was denied effective assistance of counsel when his trial counsel did not argue a violation of the Fourth Amendment in support of Defendant's motion to suppress his confession. The law on claims of ineffective assistance of counsel is well settled and several precedential decisions dictate our scope of review.

> As to whether an ineffective assistance of counsel claim can be dealt with on appeal, [the Supreme] Court has stated, [i]neffective assistance of counsel claims brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing. Therefore, on direct appeal we must determine if these ineffective assistance of counsel claims have been prematurely brought. If so, we must dismiss those claims without prejudice to the defendant's right to reassert them during a subsequent motion for appropriate relief proceeding.

*State v. Campbell*, 359 N.C. 644, 691, 617 S.E.2d 1, 30 (2005) (internal citations and quotations omitted).

Further, when claims are ripe for review,

> this Court must be highly deferential and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[....]" Defendant may rebut this presumption by specifically identifying those acts or omissions that are not "the result of reasonable professional judgment" and the court determining, "in light of all the

circumstances, the identified acts [or omissions] were outside the wide range of professionally competent assistance."

*State v. Banks*, 210 N.C. App. 30, 49, 706 S.E.2d 807, 821 (2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 689-90, 80 L. Ed. 2d 674, 694-95 (1984)) (alterations added). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690, 80 L. Ed. 2d at 695.

"When a defendant attacks his conviction on the basis that counsel was ineffective, he must show that his counsel's conduct fell below an objective standard of reasonableness." *State v. Braswell*, 312 N.C. 553, 561-62, 324 S.E.2d 241, 248 (1985). North Carolina has adopted and followed the two-part test laid out in *Strickland* for determining whether counsel's conduct fell below such an objective standard:

> In order to meet this burden, a defendant must satisfy a two-part test: "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

*Campbell*, 359 N.C. at 690, 617 S.E.2d at 29 (2005) (quoting *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693).

In further defining these terms, the North Carolina Supreme Court followed *Strickland* in defining that "[p]rejudice is established by showing 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* at 690, 617 S.E.2d at 29-30 (quoting *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698). Furthermore, "[b]oth prongs of this test must be met to prevail on an ineffective assistance of counsel claim." *Id.* at 690, 617 S.E.2d at 30.

"This Court has held that '[c]ounsel is given wide latitude in matters of strategy, and the burden to show that counsel's performance fell short of the required standard is a heavy one for defendant to bear.'" *Id.* (quoting *State v. Fletcher*, 354 N.C. 455, 482, 555 S.E.2d 534, 551 (2001), *cert. denied*, 537 U.S. 846, 154 L. Ed. 2d 73 (2002)). "Moreover, this Court indulges the presumption that trial counsel's representation is within the boundaries of acceptable professional conduct." *Id.* (citing *State v. Fisher*, 318 N.C. 512, 532, 350 S.E.2d 334, 346 (1986)).

In the case before us, it does not appear that Defendant has met the "heavy burden" of proving that trial counsel was ineffective. The absence of a Fourth Amendment argument as to the admissibility of Defendant's statement does not, by itself, render counsel's assistance "below an objective standard of reasonableness." Defendant would have to prove (1) that the performance of his trial counsel was deficient, and (2) that this deficiency worked a prejudice against his defense.

The defense's argument that trial counsel's performance was deficient is based on the assumption that suppression of the confession was warranted due to the "unlawful detention" of Defendant during the time of the show-up identification. As we discussed above, we do not find that this investigatory detention was unlawful, and therefore it would have been unnecessary, and indeed unfruitful, if trial counsel had pursued it.

As Defendant has failed under the first prong of the *Strickland* test, we need not discuss the second. However, it would seem clear that Defendant cannot be prejudiced by the absence of an unfruitful argument, and this Court's confidence in the outcome of the case is in no way undermined as a result of the absence of said argument.

Because this Court is required to "indulge in a strong presumption [that] counsel's conduct falls within the wide range of reasonable professional assistance," we do not find that Defendant has met the burden of proving this case. Furthermore, it is appropriate to decide this issue at this time because the cold record reflects all of the relevant facts and there does not appear to be any reason for instigating an investigation into trial counsel's conduct.

Defendant did not receive ineffective assistance of counsel. Trial counsel is given a wide latitude in trial strategy, and Defendant has not proven that the absence of a Fourth Amendment argument to accompany a Fifth Amendment argument was a decision that rendered counsel's performance below an objective standard of reasonableness or that the absence of such an argument worked a prejudicial effect into the outcome of the trial.

## D. Motion to Dismiss

In Defendant's final argument on appeal, Defendant contends that the trial court erred in denying his motion to dismiss the charges of discharging a firearm into a vehicle in operation. The standard of review for an appellate court's review of a motion to dismiss for insufficient evidence is well settled.

> Evidence is sufficient to sustain a conviction when, viewed in the light most

favorable to the State and giving the State every reasonable inference therefrom, there is substantial evidence to support a jury finding of each essential element of the offense charged, and of defendant's being the perpetrator of such offense.

Evidence is substantial if it is relevant and adequate to convince a reasonable mind to accept a conclusion. In considering a motion to dismiss, the trial court does not weigh the evidence, consider evidence unfavorable to the State, or determine any witness' credibility. Evidence is not substantial if it is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, and the motion to dismiss should be allowed even though the suspicion so aroused by the evidence is strong. This Court reviews the denial of a motion to dismiss for insufficient evidence de novo.

If substantial evidence, whether direct, circumstantial, or both, supports a finding that the offense charged has been committed and that the defendant committed it, the motion to dismiss should be denied and the case goes to the jury.

*State v. Bettis*, 206 N.C. App. 721, 728-29, 698 S.E.2d 507, 512 (2010) (quoting *State v. Wilkerson*, 196 N.C. App. 706, 708-09, 675 S.E.2d 678, 680 (2009)) (internal citations and quotations omitted).

Our Supreme Court has held that:

When determining the sufficiency of the evidence to support a charged offense, we must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences. A

> defendant's motion to dismiss must be denied if the evidence considered in the light most favorable to the State permits a rational jury to find beyond a reasonable doubt the existence of each element of the charged crime and that defendant was the perpetrator.
>
> Whether the evidence presented is direct or circumstantial or both, the test for sufficiency is the same. Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence. If the evidence supports a reasonable inference of defendant's guilt based on the circumstances, then it is for the [jurors] to decide whether the facts, taken singly or in combination, satisfy them beyond a reasonable doubt that the defendant is actually guilty.

*State v. Trull*, 349 N.C. 428, 447, 509 S.E.2d 178, 191 (1998) (internal citations and quotations omitted).

Here, taking all inferences in the light most favorable to the State, the denial of the motion to dismiss was appropriate. Although there is no direct evidence that the vehicle was in operation at the time of the shooting, it is a reasonable inference that arises from the other undisputed facts, such as the fact that the victim's car was found crashed on the side of the road with tire tracks being found behind it, spent shell casings were found at the intersection of Emma Lynn Court and Christenbury Hills Lane, and a bullet was found in the road, as

well as several other bullets found in the victim's driver's side door.

With the evidence standing as such, "it is for the [jurors] to decide whether the facts, taken singly or in combination, satisfy them beyond a reasonable doubt that the defendant is actually guilty." The denial of the motion to dismiss for lack of evidence of an essential element of a charged crime was appropriate here because the circumstantial evidence was sufficient to provide the jury with a reasonable inference of Defendant's guilt.

## III. Conclusion

For the reasons stated above, this Court finds no error in the findings or holdings of the Superior Court of Mecklenburg County.


No error.

Judges STEPHENS and STROUD concur.

Report per Rule 30(e).